Robinson, J.
 

 The trial court having found that by mutual mistake of the parties the written contract did not contain the stipulation as to a five-year term of the lease, and the Court of Appeals having affirmed the trial court in that respect, and no cross-petition in error having been filed by defendants in error here, the reformation of the contract is a closed incident and an accomplished fact, and this court will, therefore, treat the contract as
 
 *801
 
 containing a provision for a lease of the garage for a term of five years at a monthly rental of $50, payable each month in advance. The sole question here for determination then is whether the Court of Appeals erred in its judgment reversing that part of the judgment of the court of common pleas awarding to plaintiff in error the sum of $1,000, as liquidated damages, upon the ground that the defendants in error were entitled to a trial of that issue by a jury and the refusal of the trial court to submit it to the jury was prejudicially erroneous.
 

 The answer to that question is dependent upon the answer to the question whether the sum fixed in the contract as the amount which would be due from the party making default of the conditions of the contract to the party not so in default was a penalty or liquidated damages. If a penalty, then the refusal of the trial court to submit the question of damages to a jury was prejudicially erroneous; if liquidated damages, the judgment of the Court of Appeals in reversing the judgment of the trial court was erroneous.
 

 In determining that question, the court will look to the contract itself, which is as follows:
 

 “This agreement made and entered into this fourth day of August, 1921, at Grover Hill, Ohio, by and between Russel E. Miller, party of the first part, and C. B. Lochberger and Alfred B. Lockberger, Delphos, Ohio, R. F. D. No. 3, parties of the second part, witnesseth: Whereas, first party has this day agreed to lease unto the second party and the second party has agreed to take the following described premises: Being the gar
 
 *802
 
 age building on the north 44 feet of lot 84 of the original plat of the village of G-rover Hill, Ohio, at a monthly rental of fifty dollars ($50.00) per month to be paid each month in advance.
 

 “First party further agrees to sell and the second party agrees to buy the stock of fixtures, tools, equipment and one-half of the present stock of tires at the present market value of said fixtures, tools, equipment and one-half stock of tires, said value to be determined by two invoicers, one chosen by each party, and in the event that the two invoicers cannot agree on the price of any article, a third party shall be called in who shall fix the price of said article.
 

 “The invoice of said stock as mentioned above shall commence on the morning of August 9, 1921, and shall continue until the said stock is appraised and on the final appraisement the second party shall pay the appraised value thereof to first party.
 

 “The parties shall on the ninth day of August sign the lease and the second party shall pay the first monthly installments as provided therein and in this contract.
 

 “This contract shall be fully completed when the provisions set forth above shall have been complied with.
 

 “It is further understood and agreed by the parties to this contract that in the event that either of the contracting parties thereto shall fail to perform all and singular the conditions of the contract, the party so failing to perform shall pay to the other party the sum of one thousand dollars ($1,000.00).
 

 “In event that the building shall be destroyed
 
 *803
 
 or rendered untenable the liability of the parties hereto shall end.”
 

 This contract must be supplemented by the judgment of the court of common pleas, affirmed by the Court of Appeals, reforming the contract to the effect “that the term should have been and now is ordered to be for the period of five years.”
 

 It will be observed that this contract contains covenants as to two separate subjects:
 

 First (as reformed). A covenant on the part of the plaintiff in error to lease to the defendants in error a certain garage and lot in the village of Grover Hill for the period of five years at a monthly rental of $50 per month, payable each month in advance, and covenants by the defendants in error to accept the premises for that period and at that rental.
 

 Second. A covenant upon the part of. the plaintiff in error to sell to the defendants in error the stock of fixtures, tools, equipment, and one-half the stock of tires “at the present market value of said fixtures, tools, equipment and one-half stock of tires,” and a covenant by the defendants in error to buy the fixtures, tools, equipment, and one-half stock of tires at the present market value thereof.
 

 The contract further provides for the manner in which the present market value shall be ascertained, and the time when it shall be ascertained; and provides for the time when the lease shall be signed, but contains, no covenants as to any other subjects than the lease of the premises and the sale of the stock.
 

 There is no provision in the contract regulating
 
 *804
 
 or attempting to regulate the use to which the defendants in error shall put the premises when acquired; nor obligation on their part to do anything other than lease the premises, pay the rent, and pay for the stock of goods and fixtures. There is no provision in the contract restraining the plaintiff in error from immediately entering into similar business in the same vicinity; nor is there any attempt to transfer or control the patronage which plaintiff in error then had, or defendants in error might thereafter acquire. So the question of good will, going concern, or established busi.ness, in no way entered into the consideration of the parties in the making of this contract.
 

 The only evidence of the rental value of .the premises appears upon page 84 of the printed record, in the testimony of the plaintiff in' error:
 

 “Q. The fair rental value was about $50 a month at that time? [Referring to the date of the contract.] A. I think so.”
 

 And the only evidence as to the value of the stock of goods appears in the testimony of the plaintiff in error upon the same and the following page, and is as follows:
 

 “Q. Now, do you have any idea about what the stuff mentioned in this paper marked ‘Exhibit A’ would have invoiced on the 9th of August, 1921; do you have a general idea? A. No better idea than any one else looking over the stock.
 

 “Qi. What I am getting at, was it a large sum of money or modest sum? A. Well, I suspect a modest sum.
 

 “Q. Modest, sum? A. I don’t know just what —I don’t know what it would run. I don’t know
 
 *805
 
 what you would call a large sum or modest sum. # # #
 

 “Q. Well, I want the court to have, in a general way, about what that would invoice. Would you say $2,000, or less? A. Oh, more than that.
 

 “Q. More than $2,000? A. Yes, sir.
 

 “Q. Probably $2,200? A. I wouldn’t care to give you a close estimate, for I don’t know.
 

 “Q. This was to be taken, of course, at its real value? A. Yes, sir.”
 

 And in the evidence of Judge John F. Lindemann, found on page 99 of the printed record:
 

 “Q. Now then, go ahead and tell what was said. A. I told Mr. Russell Miller what he would have to do to satisfy the requirements of the Bulk Sales Law, namely, he would have to give us a list of all of his creditors, sworn to by him as being a true and complete list, and he agreed he would do that. I then told him that Mr. Blockberger had with him between — around $2,600 in certificates of deposit, he wanted to close the deal to-day, but that because of his liability as a trustee under the Bulk Sales Law, if he did not comply with those requirements we would insist on putting that in a local bank there, tying it up six or seven days until such time as creditors would have sufficient length of time under that law to make themselves known, and he consented to that.”
 

 The plaintiff in error having testified that in his opinion the stock was worth more than $2,000, and having declined to say it was worth more than $2,200, and the defendants in error having gone to the place of settlement at the time of
 
 *806
 
 settlement with the sum of $2,600, for the purpose of settlement, this court may reasonably assume that in the judgment of the parties to this .contract the stock of goods and fixtures was worth from $2,200 to $2,600. The value of the stock of goods and fixtures is only important in determining whether the sum fixed as the amount which the party defaulting should be required to pay to the party not in default was intended to represent the probable damage which such party would sustain, or was intended as a penalty to be used as a club in forcing performance.
 

 It will be observed that the stock of goods and fixtures was to be sold by plaintiff in error to defendants in error “at the present market value.” The damage to the seller, in case of default on the part of the buyer, would be the difference between the market value of the stock of goods and fixtures and the contract price. The contract price in the instant case being the “market value,” plaintiff’s damage would be nothing more than nominal unless special damages by way of expense and otherwise were averred and proven, none of which are averred or proven in this case.
 

 In this connection let us examine the clause which provides for the payment of $1,000 by the party breaching this contract, as follows:
 

 “It is further understood and agreed by the parties to this contract that in the event that either of the contracting parties thereto shall fail to perform all and
 
 singular
 
 the conditions of the contract, the party so failing to perform shall pay to the other party the sum of one thousand dollars ($1,000.00).”
 

 
 *807
 
 By its terms this clause specifically provides that the party failing to perform all or one of the provisions of this contract shall pay to the other the sum of $1,000. Therefore, under the terms of this contract, had the defendants in error entered into a lease for the premises for the period of five years, and paid therefor rent each month in advance, and failed to receive and pay for the stock of goods and fixtures, the plaintiff in error, according to the contract, would have been entitled to recover the sum of $1,000 from them for the breach of that part of the contract which pertained to the sale of the goods and fixtures.
 

 There are many reported cases in the various jurisdictions upon the subject of liquidated damages and penalty, and throughout most of them runs the principle that the theory of compensation, rather than punishment, must have been in the minds of the contracting parties to constitute the stipulated sum liquidated damages, and so the declaration is usually made that whether a stipulated sum to be paid by the party defaulting to the party not in default is liquidated damages or a penalty is dependent upon the particular circumstances of each case. To cite the many cases discussing the subject would be but to incumber the report with authorities which are available to the bench and bar in other reports. From an investigation of the cases, however, we think the following general principles may be enunciated:
 

 In determining whether , the sum provided to be paid in the contract is liquidated damages, or a penalty, a court will construe the contract by its four comers in the light of the situation of the
 
 *808
 
 parties a,t the time of the execution of the contract, and from that position will determine whether the damages which would be sustained by reason of breach could, by the process of computation and adjustment, have been easily and approximately ascertained at the time of execution of the contract; and, in determining whether they were so ascertained, will compare the amount stipulated with the amount of damages which would probably result from the breach, and if there is such discrepancy between the sum stipulated and the damages which would probably mid naturally result from the breach as to indicate that the sum stipulated could not have been arrived at by a process of computation and adjustment, or, if arrived at by process of computation and adjustment, such process did not have for its purpose compensation but was arrived at for some purpose other than compensation, the sum stipulated will be held to be a penalty rather than liquidated damages, the theory being that the parties to the contract, having in mind the damage which will be occasioned by its breach, may compute or estimate that damage between themselves and contract with reference thereto and thus avoid the necessity of submitting the question to a court or other tribunal, and so long as the sum which they agree upon bears a reasonable proportion to the damage which would result from the breach, such sum will be considered as liquidated damages; or where the damage which will result from a breach would be difficult of ascertainment in advance, or difficult of proof after the breach, and the sum stipulated is not unreasonable or uncon
 
 *809
 
 soionable, and bears some reasonable proportion to the value of the subject-matter and tbe damages which might reasonably result, and in fixing the sum stipulated the parties had in mind compensation and endeavored to anticipate the damage which would probably result, the stipulated sum will be construed as liquidated damages and not as a penalty. But where it is apparent from the contract itself and the situation of the parties thereto that the sum stipulated was arrived at arbitrarily, and bears no relationship to the damage which probably would result from a breach, where such damage is reasonably ascertainable, the sum stipulated as damages will be considered a penalty and not liquidated damages, and the parties will be relegated to their right to recover such damage as they may be able to prove;. and where a contract contains several covenants, and the stipulated forfeiture is applicable alike to each covenant, and would become due upon the breach of a single covenant, and is clearly a penalty as to one covenant, it will be held a penalty as to all covenants.
 

 This court had the very question involved in this case under consideration in the case of
 
 Berry
 
 v.
 
 Wisdom, 3
 
 Ohio St., 241, where it held:
 

 “Where the note is to be paid upon full proof of a breach of the agreement on the part of A., and the agreement contains several covenants to be performed by A., some óf more, and some of less importance than others, and the actual amount of damages which B. would sustain by a breach of some of the covenants, would be easily ascertained; the sum mentioned in the note is not to be con
 
 *810
 
 sidered 'as liquidated damages, but iu the nature of a penalty.”
 

 Measured by this rule, and applying tbe sum stipulated in this case to tbe stock of goods and fixtures, the sum stipulated is considerably in excess of one-third tbe entire value of tbe subject-matter of tbe contract, and is in excess of tbe damages which plaintiff in error could recover as actual damages by tbe difference between nominal damages and tbe sum of $1,000, and relates to a matter of which tbe actual damage could be easily ascertained. It therefore is apparent that tbe sum was not arrived at by tbe parties to this contract by fair calculation and adjustment, with a view to establishing by agreement tbe compensation which a jury would be obliged to return from tbe results which would inevitably flow from tbe breach of tbe contract, but that the sum was arbitrarily fixed as a penalty or security that tbe contract would be performed.
 

 Applying tbe sum fixed as damages to tbe breach of tbe other subject of tbe contract, while tbe record discloses by tbe evidence of tbe plaintiff in error that tbe stipulated rental of $50 per month, each month in advance, was “tbe fair rental value” of the property “at that time,” and on this record the damage in that respect would necessarily be nominal, yet by reason of tbe fact that damages with reference to tbe breach of the contract to lease for a period of five years would not be easily computable and ascertainable in advance, and so many eventualities might occur and might have been in tbe minds of tbe contracting parties, which might have prevented tbe owner
 
 *811
 
 from realizing rents aggregating a sum equal to the price stipulated in the contract from persons other than the defendants, which could not by the process of calculation and adjustment have been easily fixed at a definite sum, we are not able to say that the parties had in mind a purpose to do other than name a sum which would compensate for the breach of the agreement to lease.
 

 However, in view of the fact that the contract pertained to two subjects, and contained separate covenants as to each subject, and the clause fixing the sum to be forfeited by its express terms made the stipulated sum payable upon the failure of either party “to perform all and singular the conditions of the contract,” and the further fact that by reason of the terms of the contract the damages for the breach of the sale of personal property could in no event have been other than nominal, under the rule enunciated in
 
 Berry
 
 v.
 
 Wisdom, supra,
 
 this court can reach no other conclusion than that as to that subject the sum named was a penalty. Being in gross, and a penalty as to one subject, it becomes a penalty as to all subjects, since by the express terms of the contract it was applicable alike to the covenants upon the subject of the sale of personal property and the covenants upon the subject of the lease.
 

 The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Marshall, O. J., Hat and Allen, JJ., concur.