SNARR, APPELLEE AND CROSS-APPELLANT, *v.* PICKER CORPORATION, APPELLANT; MANUFACTURERS HANOVER TRUST CO., CROSS-APPELLEE.

(Nos. 48893 and 48925 — Decided December 12, 1985.)

*J. Bruce Hunsiker,* for appellee and cross-appellant James L. Snarr.

*Donald A. Rowe* and *S. David Worhatch,* for appellant Picker Corporation.

*John A. Hallbauer,* for cross-appellee Manufacturers Hanover Trust Co.

NAHRA, P.J. This is an appeal and cross-appeal from the decision of the court of common pleas granting plaintiff-appellee and cross-appellant, James L. Snarr, his vested profit-sharing benefits but denying prejudgment interest. The following facts give rise to this appeal.

The facts were stipulated in the trial court. James Snarr was employed by Picker Corporation for eleven years. During his employment, he was enrolled in Picker's profit-sharing plan. This plan was wholly funded by employer contributions. By the time he terminated his employment, Snarr had $8,712.36 vested in his account. He was entitled to receive these benefits after retirement. Section 8.12, Article VII of the plan provided that an employee would forfeit his share in the plan if he was employed by a competitor of Picker within two years of his termination. The forfeited share would not revert to Picker; instead, it would be shared out to other participants in the plan.

In 1970, Snarr left Picker to work for General Associates, a direct competitor of Picker. Subsequently, he made a claim for his benefits in the profit-sharing plan. This claim was denied pursuant to Section 8.12. In 1974, Snarr filed suit to collect these benefits. On June 6, 1984, the trial court issued a final judgment granting Snarr these benefits but denying him prejudgment interest. Both the appeal and cross-appeal were timely filed.

## I

The appellant's first assignment of error is that:

"The court erred in ruling that a noncompetition clause included in a noncontributory profit sharing plan violates public policy in Ohio, thereby rendering the clause unenforceable.* * *"

Essentially, appellant Picker argues that the trial court erred in holding that Ohio courts will void a noncompetition clause contained in a noncontributory profit-sharing plan as violative of public policy if it is an unreasonable restraint of trade.

Although this issue has been extensively litigated in other states, it is a case of first impression in Ohio.[1] We turn, initially, to these courts for guidance.

A minority of states treat such clauses as similar to covenants not to compete. These courts have reasoned that both types of agreements can place intolerable burdens on the employee and commerce.

"[It] would be unduly formalistic if we invalidated a covenant not to compete because it was in direct restraint of trade, but approved forfeiture provisions which indirectly accomplished the same result. Even the majority rule recognizes that restraint is undoubtedly the purpose of the forfeiture provision." *Almers* v. *South Carolina Natl. Bank of Charleston* (1975), 265 S.C. 48, 59, 217 S.E. 2d 135.

The majority of jurisdictions which have addressed this issue have distinguished forfeiture clauses from covenants not to compete on either of two grounds. First, profit-sharing plans are mere gratuities on which employers may place any condition. *Van Pelt* v. *Berefco* (1965), 60 Ill. App. 2d 415, 429, 311 N.E. 2d 858. Second, a forfeiture clause, unlike a covenant not to compete, is not a

---

[1] A federal district court sitting in a diversity case stated that in its opinion Ohio law would uphold any noncompetition employment restriction in a noncontributory profit-sharing plan. However, this was dictum. The court held that the restriction was reasonable as applied. *Keller* v. *Graphic Systems of Akron, Inc.* (N.D. Ohio 1976), 422 F. Supp. 1005.

bar to the employee's continued employment in his field. It merely forces him to choose between his benefits and his ability to work in his field. *Rochester Corp. v. Rochester* (C.A. 4, 1971), 450 F.2d 118.

We note that the first rationale supporting the majority position is precluded in Ohio. Pension benefits in a noncontributory plan are not mere gratuities but are vested benefits which may only be forfeited for cause. *Cantor v. Berkshire Life Ins. Co.* (1960), 171 Ohio St. 405, 410 [14 O.O.2d 157]:

"A retirement program has become a basic part of an employee's remuneration even as his wages are a part thereof, and a consideration flows to the employer as well as to the employee through such a program."

The second basis used to distinguish covenants from forfeiture clauses is that a forfeiture clause does not prohibit an employee from working; instead, it merely penalizes him if he works for a competitor. The rationale of this position is that an unreasonable covenant not to compete violates public policy only because it results in a bar which prevents the employee from working.

In Ohio another rationale underlies judicial review of covenants not to compete. It is clear that the public has an interest in a mobile work force. Locking an employee into a company can have an anticompetitive impact. *Raimonde v. Van Vlerah* (1975), 42 Ohio St. 2d 21 [71 O.O.2d 12]. It may prevent skilled employees from moving to areas where they are the most needed and demanded. Under our economic system, where supply and demand are fundamental, it was recognized early that covenants which bound employees to employers under unreasonable terms were a restraint of trade. At common law any covenant was prohibited. *Mitchel v. Reynolds* (1711), 1 P. Wms. 181, 24 Eng. Rep. 347. Eventually, courts allowed covenants to the extent necessary to protect employers from unfair competition.

Under this rationale, forfeiture clauses are indistinguishable from covenants not to compete. The indirect restraint placed on an employee may eventually become so great that it has the same lock-in effect that a covenant has. For these reasons, we hold that a noncompetition clause in a profit-sharing plan will be reviewed for reasonableness.

II

The appellant's second issue challenges the correctness of the trial court's determination that the noncompetition clause was unreasonable as it applies to James Snarr. We find the clause was unreasonable and therefore affirm.

The trial court applied the test used to judge the reasonableness of a covenant not to compete to judge the reasonableness of Section 8.12. We agree that this was the proper test. The test is well established and is logically applicable because review in this area is based on the same rationale. In determining the validity of a covenant not to compete or an agreement in restraint of trade, "each case must be decided on its own facts and a reasonable balance must be maintained among the interests of employers, employees and the public." *Extine v. Williamson Midwest* (1964), 176 Ohio St. 403 [27 O.O.2d 375], paragraph one of the syllabus.

Among the factors to be considered are:

" '[t]he absence or presence of limitations as to time and space, * * * whether the employee represents the sole contact with the customer; whether the employee is possessed with confidential information or trade secrets; whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition; whether the cove-

nant seeks to stifle the inherent skill and experience of the employee; whether the benefit to the employer is disproportional to the detriment to the employee; *whether the covenant operates as a bar to the employee's sole means of support;* whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment; and whether the forbidden employment is merely incidental to the main employment.' " (Emphasis added.) *Raimonde* v. *Van Vlerah, supra,* at 25.

Although some legitimate benefits flowed to Picker from the clause in question, its sweep was too broad. It worked a forfeiture of substantial vested benefits regardless of the scope of the perceived competition. The forfeiture by its terms prohibited any employment for any competitor anywhere for any period of time within two years after leaving Picker. Thus, a substantial benefit could be lost by a former employee without any showing that his actions in any way harmed his former employer.

The contractual forfeiture clause was not a reasonable estimate of loss in case of a breach and it is, therefore, unenforceable. The Restatement of the Law 2d, Contracts (1981) contains the following guideline for a distinguishing between liquidated damages and penalties.

"Section 356. Liquidated Damages and Penalties.

"(1) Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty."

The clause calls for a flat forfeiture of all pension benefits if the employee works for a competitor. This forfeiture takes place regardless of the length of breach, the type of information the employee may take to a competitor, or the location of the competitor. In other words, the same penalty is applied whether or not there is competitive harm. No attempt was made to correlate the harm to the forfeiture. The term is not enforceable.

The rule in the Restatement echoes the longstanding law in Ohio. In *Menter & Rosenbloom Co.* v. *Gray* (1899), Hosea 95, 99, the court voided a contractual provision calling for an employee to pay his past employer $1,000 if he engaged in similar employment within four years. It determined that the clause was unreasonable because it had no relationship to any harm to the employer. In the instant case, no harm was alleged to have resulted from the appellee's working for a now-defunct competitor.

The facts of the instant case clearly illustrate how harsh this clause is in relation to the possible harm. A year prior to Snarr's leaving Picker, he was forced to take a new job outside his department at a cut in pay or face termination from the engineering department. He left and worked for a competitor in a different product area.

Picker pointed to no trade secrets, customer list or other forms of unfair competition which Snarr could or did use to its detriment. Nevertheless, Snarr was required to forfeit pension benefits earned over an eleven-year period. In light of the above, the forfeiture is unreasonable as applied to the appellee.

The assignment fails.

### III

Snarr, the cross-appellant, contends that the trial court erred by not awarding prejudgment interest.

When damages are liquidated and the only dispute is whether they are owed, prejudgment interest should be awarded. *Braverman* v. *Spriggs* (1980), 68 Ohio App. 2d 58, 60 [22 O.O.3d 47]. In this instance, Snarr's account has been

invested since 1970. It has been earning interest throughout the period of litigation. Snarr has now established that he was entitled to receive those benefits. He is entitled to the principal plus simple interest calculated by the various statutory amounts in effect throughout this period.

The assignment has merit.

The cause is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

*Judgment accordingly.*

ANN MCMANAMON, J., concurs.

KRUPANSKY, J., dissents.

KRUPANSKY, J., dissenting. I respectfully dissent from the majority opinion.

This court should not interfere with the parties' freedom of contract. The pension plan was mutually advantageous to both parties. Both parties voluntarily entered into the agreement with full knowledge of its terms and conditions. Snarr breached the provisions of the pension plan and cannot complain about the consequences of his breach now.

I agree with the reasoning set forth in *Keller* v. *Graphic Systems of Akron, Inc.* (N.D. Ohio 1976), 422 F.Supp. 1005, which represents the majority of the courts' opinion on the validity of noncompetition clauses in noncontributory profit-sharing plans, *i.e.,* a noncompetition clause in a noncontributory plan is valid and enforceable.

Three considerations support the position taken by the court in *Keller,* *supra.* First, when the financial loss to the departing employee is compared to the potential loss to the company's faithful plan participants, the latter's interests should prevail because the employee's decision to join a competitor could have a substantial impact on the company's profits. Thus, the reasonable business justification of protecting the company and its employees from the competition and resulting loss in profits outweighs any harm to the departing employee.

Second, the noncompetition clause in the employment contract is distinguishable from the forfeiture clause in the pension plan contract. In an employment contract the employee is *prohibited* from engaging in competitive employment; however, in a pension plan the employee is forced to choose between the pension benefits and employment at a competitor:

"* * * The authorities, though, generally draw a clear and obvious distinction between restraints on competitive employment in employment contracts and in pension plans. The strong weight of authority holds that forfeitures for engaging in subsequent competitive employment, included in pension retirement plans, are valid, even though unrestricted in time or geography. The reasoning behind this conclusion is that the forfeiture, unlike the restraint included in the employment contract, is not a prohibition on the employee's engaging in competitive work but is merely a denial of the right to participate in the retirement plan if he does so engage.* * *" *Rochester Corp.* v. *Rochester* (C.A. 4, 1971), 450 F.2d 118, at 122-123. (Footnotes omitted.)

Third, a contract is a contract; the parties knowingly and willingly entered into the agreement with certain expectations with which this court should not interfere.

For these reasons, I would find the noncompetition clause valid and enforceable.

It is not only foolhardy but it also sets a dangerous precedent for courts to interfere with the freedom of contract between contracting parties. This court should not be examining the agreement

to determine whether the restriction is reasonable as applied to Snarr. Snarr made his decision and now must live with it. As a result of the majority's decision, parties will be reluctant to enter into contractual relationships for fear of the outcome if one party becomes disgruntled and runs to the courts for an interpretation when the contractual language is perfectly clear.

Finally, since the contractual language is clear, Snarr is not entitled to damages and thus is most definitely not entitled to prejudgment interest. I would affirm the denial of prejudgment interest for Snarr.