USS GREAT LAKES FLEET, INC., Appellant,

v.

SPITZER GREAT LAKES, LTD., Appellee.

[Cite as *USS Great Lakes Fleet, Inc. v. Spitzer Great Lakes, Ltd.* (1993), 85 Ohio App.3d 737.]

Court of Appeals of Ohio,
Lorain County.

No. 92CA005393.

Decided March 31, 1993.

738

R. Patrick Baughman, Alys M. Portman and James V. Weixel, for appellant.
Anthony B. Giardini, for appellee.

BAIRD, Judge.

This cause comes before the court upon the appeal of USS Great Lakes Fleet, Inc. ("Great Lakes") from a judgment in the Lorain County Court of Common

Pleas finding no breach of Great Lakes' sales contract with Spitzer Great Lakes, Ltd. ("Spitzer"). We reverse.

In 1986, the parties entered into a contract for the sale of the SS Leon Fraser by Great Lakes to Spitzer for the sum of $200,000. Spitzer intended to convert the ship into a floating casino following passage in the state legislature of an initiative to amend the Ohio Constitution to allow such enterprises. The purchase agreement contained the following restrictive covenant and provision for liquidated damages:

"5. It is understood and agreed that the Vessel is being sold and purchased for purposes other than the water transportation of goods. In the event that efforts to develop the Vessel as a featured attraction are not successful, the Vessel may be sold for the purpose of scrapping and shall not be used in commerce for the transportation of goods. Should Buyer or Buyer's successor for any reason use the Vessel for the transportation of goods in commerce in contravention of the foregoing, Buyer shall be liable to Seller for breach of said covenant. Buyer and Seller, recognizing the difficulty inherent in determining the amount of damages that would be owed in the case of such a breach, hereby agree that the damages due therefor shall be Fifty Thousand Dollars ($50,000.00) and that said amount is a reasonable estimate of the amount of harm likely to be caused by such a breach and is not a penal sum."

When the state legislature failed to pass the initiative, Spitzer sold the ship to Fraser Shipyards, Inc. ("Fraser"). The purchase price was $700,000, which was comprised of an original offer of $650,000, plus an additional $50,000 which the sales agreement specifically provided in the purchase price to cover Spitzer's possible liability to Great Lakes for breach of its contract.[1] Fraser removed the center section of the ship, added specialized equipment, otherwise converted the vessel for further sale and use as a cement carrier, and changed the ship's name to "Alpena." The ship was then sold and is being used to transport cement. Great Lakes filed suit against Spitzer, alleging that the contract had been breached and that the $50,000 damages called for in the contract had not been paid.

The case was tried by the lower court on stipulated facts. The parties stipulated that Spitzer sold the ship not for scrap, but for modification and use as a cement carrier, and that the ship was not being used in direct competition with Great Lakes, as Great Lakes does not transport cement.

In finding for Spitzer, the trial court reasoned that the amount provided as damages in the contract would operate as a penalty because the Alpena was not

---

1. The sales agreement referred to clause 5 of the 1986 contract as a "liquidated damages matter between seller and USS Great Lakes Fleet, Inc."

in competition with Great Lakes and, therefore, Great Lakes was not actually damaged. It is from this judgment that Great Lakes now appeals, asserting two assignment of error:

## Assignments of Error

"I. The trial court erred when it failed to consider the facts and circumstances surrounding the time of the execution of the contract between the Fleet and Spitzer, and instead retrospectively considered the reasonableness of the liquidated damages clause in light of the facts and circumstances surrounding the time of the breach."

"II. The trial court erred in implicitly adding into the liquidated damages clause of the contract an unwritten requirement that for the clause to take effect, the vessel must have been subsequently used in competition with the Fleet's lake shipping activities."

Great Lakes' assigned errors are interrelated and will, therefore, be addressed together.

Great Lakes alleges that the trial court should have awarded it $50,000 in liquidated damages as it was irrelevant, under the terms of the contract, that there were no actual compensable damages to Great Lakes.

▇▇▇▇ The validity of a liquidated damage clause depends on whether the clause operates as a penalty or as a fair assessment of damages. *Darrow v. Kolczun* (Mar. 6, 1991), Lorain App. No. 4759, unreported, 1991 WL 35120. The test of whether a contractual provision is a valid liquidated damages provision or a penalty is whether the objective of the provision is reasonable compensation for actual damages. *Cad Cam, Inc. v. Underwood* (1987), 36 Ohio App.3d 90, 91, 521 N.E.2d 498, 500. Where the parties have agreed to the amount of damages ascertained by estimation and adjustment, and have expressed that agreement in clear and unambiguous terms, that amount should be treated as liquidated damages, and not as a penalty if (1) the damages are uncertain as to amount and difficult to prove; (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intentions of the parties; and (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof. *Samson Sales, Inc. v. Honeywell, Inc.* (1984), 12 Ohio St.3d 27, 12 OBR 23, 465 N.E.2d 392, syllabus.

▇▇▇▇ The only evidence regarding the objective of the parties at the time the contract was formed is found in the affidavit of Spitzer's executive vice president. In this affidavit, the vice president admits that, at the time the contract was being

negotiated, Great Lakes indicated a concern that the ship not be sold or placed back into service so as to compete with the Great Lakes Fleet on the Great Lakes. Spitzer agreed that this was a valid concern and, therefore, agreed to the clause at issue. Great Lakes presented no evidence, other than the contract itself, as to what was discussed during negotiations or what the objective of the parties was at the time. Thus, in addition to the recitations in the contract itself, the court had before it evidence that the objective of the parties was reasonable compensation for actual damages which could come to Great Lakes from subsequent sale of the ship. The trial court nevertheless found the clause to be a penalty and not a valid liquidated damages clause, apparently based upon its conclusion that the absence of proof of actual damages precludes effectuation of the clause. If the liquidated damages clause was otherwise valid, however, it is our view that Great Lakes was not required to prove that actual damages resulted from the breach. In adopting this view, we ascribe to what has been called the majority view. 22 American Jurisprudence 2d (1988) 777, Damages, Section 723. See, also, *Mount Olivet Baptist Church, Inc. v. Mid–State Builders, Inc.* (Oct. 31, 1985), Franklin App. No. 84AP–363, unreported, 1985 WL 10493.

This, however, does not end our inquiry. While the only evidence presented showed that the parties contemplated damages which might result if the ship was sold into competition with Great Lakes, the contract itself did not make such a distinction. The clause stated, "[s]hould Buyer or Buyer's successor for any reason use the Vessel for the transportation of goods in commerce * * *, Buyer shall be liable to Seller for breach of said covenant." The trial court implied that the liquidated damages clause would only be enforceable if the ship was sold, not just for the "transportation of goods in commerce," but for the transportation of goods in commerce and in competition with Great Lakes. Great Lakes contends that, since the vessel was not converted into a casino and was not sold for scrap, and instead is being used for the transportation of goods, Spitzer is strictly liable to it under the terms of the sales contract for the liquidated damages amount.

We have found that the contract contained a valid liquidated damages clause. In further interpreting the contract, however, we are not permitted to add conditions which are not found therein. The agreement in question is unambiguous on its face and, therefore, we will not construe it contrary to its plain terms. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 544 N.E.2d 920, syllabus. The contract clearly states that Spitzer would be liable to Great Lakes if the ship was sold for the purpose of being utilized to transport any goods in commerce. The ship was sold for use in transporting cement, albeit the transportation of cement is a specialized function which does not compete with Great Lakes. In so doing, Spitzer breached the terms of the liquidated damages clause.

■ Spitzer also argues that the "S.S. Leon Fraser," the vessel covered by the contract, no longer exists because of the extensive modification which was undertaken in its conversion into the "Alpena." Like the trial court, we find no merit in this argument. The removal of the center section of the ship, the addition of specialized equipment, and the changing of the ship's name is not sufficient to support an argument that the ship covered by the terms of the contract at issue no longer exists.

The first and second assignments of error are well taken. The judgment of the trial court is reversed, and the cause is remanded for entry of an order consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

Cook, P.J., concurs.

Dickinson, J., dissents.

Dickinson, Judge, dissenting.

I would affirm the decision of the court of common pleas.

## I. Factual Background

The plaintiff in this case is in the business of transporting iron ore on the great lakes for the domestic steel industry. It is the former owner of an ore boat that was known as the SS Leon Fraser. During 1986, plaintiff sold the SS Leon Fraser to the defendant in this case for $200,000. At that time, it was the defendant's intention to convert the boat into a floating gambling casino. The sales agreement included a clause that if the boat were not developed into "a featured attraction," it could be sold, "for the purpose of scrapping and shall not be used in commerce for the transportation of goods." The agreement further provided:

"Should Buyer or Buyer's successor for any reason use the Vessel for the transportation of goods in commerce in contravention of the foregoing, Buyer shall be liable to Seller for breach of said covenant. Buyer and Seller, recognizing the difficulty inherent in determining the amount of damages that would be owed in the case of such a breach, hereby agree that the damages due therefor shall be Fifty Thousand Dollars ($50,000.00) and that said amount is a reasonable estimate of the amount of harm likely to be caused by such a breach and is not a penal sum."

The defendant did not develop the boat into "a featured attraction," nor did it sell the boat for scrap. Instead, it sold it to a shipyard for $700,000. The shipyard, after making certain modifications to it, resold the boat to the Huron

Cement Company. Huron has renamed the vessel the Alpena and is using it for the sole purpose of hauling powdered cement for itself. Huron is not in the business of transporting iron ore and plaintiff is not in the business of transporting powdered cement.

Plaintiff sought recovery of $50,000 in the Lorain County Court of Common Pleas based upon the above-quoted provision of the sales agreement. That court granted judgment to defendant, finding that the clause at issue, "would operate as a penalty due to the fact that the new vessel, the Alpena, is not in any competition with the plaintiff and the plaintiff has not been and will not be damaged."

Plaintiff filed a timely appeal to this court, assigning two errors: (1) that the trial court considered the reasonableness of the clause at issue "in light of the facts and circumstances surrounding the time of the breach" and should have restricted its inquiry to "the facts and circumstances surrounding the execution of the contract"; and (2) that the trial court erred by "implicitly" adding to the clause at issue "an unwritten requirement that for the clause to take effect, the vessel must have been subsequently used in competition with the [defendant's] lake shipping activities." I would overrule both assignments of error.

## II. Discussion

There appears to be no real dispute in this case about whether plaintiff has suffered any damages as a result of the operation of the Alpena. Although plaintiff did suggest at oral argument that it had a concern regarding its relations with its unionized employees because the Alpena is allegedly being operated by individuals who are not union members, neither its alleged concern, nor the status of the crew of the Alpena, is revealed by the record before this court. The issue in this case, therefore, is whether a plaintiff in a breach of contract case can recover $50,000 based upon a stipulated damages clause when it has suffered no actual damages whatsoever.

The purpose of damages in contract law is to "place the aggrieved party in the same economic position he would have had if the contract had been performed." Calamari & Perillo, The Law of Contracts (3 Ed.1987) 591, Section 14–4; 3 Restatement of the Law 2d, Contracts (1981) 157, Section 356, Comment *a*. A penalty, on the other hand, punishes a wrongdoer.

"A penalty * * * involves the enforcement of an obligation to pay a sum fixed by law or agreement of the parties as a punishment for the failure to fulfill some primary obligation. * * * [A] penalty subjects [a party] to a liability beyond the actual damage caused by his breach of the primary obligation." 5 Williston, A Treatise of the Law of Contracts (3 Ed.1961) 641, Section 770. It is not within the parties' freedom to contract to include a punishment for a breach of contract.

Although parties are free to negotiate and establish the primary rights under a contract, they are not free, "except within narrow limits," to determine the remedial rights that will be provided upon a denial of one of those primary rights:

"Remedies are provided by the state and are defined by public rather than by private law. Therefore, for example, a contractual clause providing that in the event of breach specific performance will be granted will not be given effect." Calamari & Perillo, *supra*, at 640, Section 14–31.

Similarly, a clause providing that upon a breach of contract, a penalty will be assessed, will not be given effect.

Courts in Ohio have long recognized that stipulated damage clauses that are found to be penalties are not enforceable. See, *e.g.*, *Jones v. Stevens* (1925), 112 Ohio St. 43, 146 N.E. 894. The Ohio Supreme Court has acknowledged a three-part test for the purpose of determining whether a particular stipulated damages clause is a provision for liquidated damages and, therefore, enforceable or a penalty and, therefore, not enforceable:

"[L]iquidated damages exist in a contract when (1) the damages would be uncertain as to amount and difficult of proof; (2) when the contract as a whole is not so manifestly unreasonable and disproportionate as to justify the conclusion that it does not express the true intention of the parties; and (3) when the contract is consistent with the conclusion that it was the intention of the parties that the damages in the amount stated should follow the breach." *Id.* at 49, 146 N.E. at 895. See *Samson Sales, Inc. v. Honeywell, Inc.* (1984), 12 Ohio St.3d 27, 12 OBR 23, 465 N.E.2d 392, syllabus.

The first part of the above-quoted three-part test is whether the damages would be "uncertain as to amount and difficult of proof." If this part of the test is applied to the facts as they existed at the time of defendant's breach in this case, the stipulated damages clause at issue fails. There is no uncertainty about the amount of plaintiff's damages; its damages are zero. Further, there is no problem related to the proof that those damages are zero. It is simply a matter of considering the evidence that the Alpena is not being used in competition with any of plaintiff's vessels.

The plaintiff has argued, however, that the first part of the three-part test should not be applied to the facts as they existed at the time of the breach, but rather should be applied to the facts as they existed at the time the contract was entered into. At that time, it would have appeared that potential damages from competition would be "uncertain as to amount and difficult to prove." Admittedly, there is support for this approach in previous Ohio cases. For example, the Court of Appeals for Franklin County, in *Mount Olivet Baptist Church, Inc. v. Mid–State Builders, Inc.* (Oct. 31, 1985), Franklin App. No. 84AP–363, unreport-

ed, at 17–18, 1985 WL 10493, stated that "[p]roof of actual damages is not required of a party seeking to recover under a valid liquidated damages clause, even where hindsight would show that no actual damages would flow from the breach." The court's opinion in that case, however, reveals that the quoted statement was dicta because actual damage did result from defendant's breach (delay in completion of a construction project): "Even had Mid–State proven that the church suffered no loss in donation revenue, other aspects of the church's loss—increased dirt, noise and inconvenience from construction; loss of building heat; and loss of use—are unquantifiable." *Id.* at 17. See, also, *Miller v. Blockberger* (1924), 111 Ohio St. 798, 146 N.E. 206. Determination of whether the first factor is satisfied in this case, therefore, depends upon the perspective from which it is viewed.

The second factor listed by the court in *Jones* was whether the contract, as a whole, was unreasonable. It appears that this factor has been interpreted as meaning that the amount of stipulated damages should be compared to the total value of the contract and to the approximate amount of damages that could be anticipated to be suffered upon a breach, and a determination made regarding whether the relationship among them is "reasonable." The amount of stipulated damages in this case, $50,000, was equal to twenty-five percent of the value of the entire contract. Further, if the amount of the stipulated damages, $50,000, is compared to the amount of actual damages, zero, it could easily be concluded that the relationship is so disproportionate that "it does not express the true intention of the parties." Again, however, plaintiff has argued that the $50,000 stipulated damages should not be compared to the actual damages, but must be compared to the potential damages that the parties may have anticipated at the time the contract was executed. There is no evidence in the record regarding what effect the entry of the SS Leon Fraser into competition with plaintiff's Great Lake's fleet would have had on plaintiff's business. For example, possibly other ore boats are readily available for purchase so that the availability of one more would not harm plaintiff in any way. The amount of damages that could have been anticipated if the contract was breached by a sale to someone who, as happened in this case, did not go into competition with plaintiff is clear. That amount was zero. It would appear, therefore, that the only evidence before the trial court regarding the amount of damages that could reasonably be anticipated at the time the contract was entered indicated that those damages would likely be zero. I would find that, regardless of the perspective from which the second factor is viewed, it weighs in favor of finding that the stipulated damages clause at issue is a penalty.

The final factor listed by the court in *Jones* was a consideration of the intention of the parties. In this case, as previously mentioned, the contract itself included the following:

"Buyer and Seller, recognizing the difficulty inherent in determining the amount of damages that would be owed in the case of such a breach, hereby agree that the damages due therefor shall be Fifty Thousand Dollars ($50,000) and that said amount is a reasonable estimate of the amount of harm likely to be caused by such a breach and is not a penal sum."

Such seemingly clear language about the parties' intent, however, is not determinative. The contract at issue in *Samson Sales*, for example, included a statement that the $50 stipulated damages that was to be paid the plaintiff in that case if the defendant, a burglar alarm company, failed to properly perform was, "liquidated damages and not * * * a penalty and this liability shall be exclusive." *Id.*, 12 Ohio St.3d at 28, 12 OBR at 24, 465 N.E.2d at 393. The court in *Samson* disposed of that language by saying, "it is beyond comprehension that the parties intended that damages in the amount of $50 should follow the negligent breach of the contract." *Id.* at 29, 12 OBR at 25, 465 N.E.2d at 394. The language of the contract at issue in this case could be as easily disposed of by saying that it was "beyond comprehension" that the parties could have intended to provide plaintiff a bonus equal to twenty-five percent of the original contract price upon the happening of an event that did not harm plaintiff in any way.

Based upon my analysis of the above three-part test, I would affirm the decision of the trial court, regardless of whether the first factor is viewed from the perspective of the time of the execution of the contract or the time of the breach. There is another way of viewing this case, however, that counsels more clearly in favor of affirmance.

In *Snarr v. Picker Corp.* (1985), 29 Ohio App.3d 254, 29 OBR 317, 504 N.E.2d 1168, the Court of Appeals for Cuyahoga County considered a clause that provided that if an employee left his employment and went to work for a competitor within two years, that employee would forfeit his vested interest in the employer's profit sharing plan. The plaintiff in *Snarr* did go to work for a competitor and, upon the denial of benefits, filed an action against his former employer. The court found that the forfeiture clause provided a penalty, not liquidated damages:

"The clause calls for a flat forfeiture of all benefits if the employee works for a competitor. This forfeiture takes place regardless of the length of breach, the type of information the employee may take to a competitor, or the location of the competitor. In other words, the same penalty is applied whether or not there is competitive harm. No attempt was made to correlate the harm to this forfeiture. The term is not enforceable." *Id.* at 257, 29 OBR at 320, 504 N.E.2d at 1171.

As discussed above, the plaintiff in this case has argued that the question of potential damages should be viewed from the perspective of the time at which the contract was entered and that, from that perspective, it was concerned about the

SS Leon Fraser being put back into service hauling iron ore in competition with plaintiff.[2] Plaintiff has further argued that, if the SS Leon Fraser had been placed into service in competition with it, it would have suffered damages and those damages would be difficult to measure. Therefore, it argues that the stipulated damages clause should have been upheld.

The clause that was included in the contract, however, was much broader than would have been necessary to protect plaintiff from competition. Pursuant to the clause included, it would have been a violation to place the SS Leon Fraser back into commerce hauling any kind of goods any where in the world. As in *Snarr*, no attempt was made at the time the contract was executed to correlate the harm to the amount of stipulated damages. Accordingly, based upon the reasoning of the court in *Snarr*, the stipulated damages clause at issue in this case is an invalid penalty.

The decision of the Ohio Supreme Court in *Miller v. Blockberger, supra*, is instructive on this question. At first blush, it appears to be a decision supportive of plaintiff ·in this case. The first paragraph of the syllabus contains the following:

"In determining whether the sum provided in a contract to be paid in the event of its breach is liquidated damages, or a penalty, a court will construe the contract by its four corners in the light of the situation of the parties at the time of the execution of the contract, and from that position will determine whether the damages which would be sustained by reason of the breach could, at the time of the execution of the contract, by the process of computation and adjustment, have been easily and approximately ascertained * * *."

The contract at issue in *Blockberger* related to two separate subjects: (1) the purchase of certain equipment, and (2) the rental of a garage. The stipulated damages clause was applicable upon a breach of either. The defendant in that case apparently failed to pay the agreed-upon rental and the plaintiff sought to recover the stipulated damages of $1,000. The court found that if the clause for the purchase of equipment had been breached, which provided that the purchase price would be the fair market value, only nominal damages would have been suffered. The stipulated damages clause, therefore, was a penalty in regard to the purchase of equipment clause. Even though the court found that if the stipulated damages clause would have applied only to the rental agreement clause (the clause that had actually been breached) it would have been valid, it ruled

---

2. Although defendant argued to the trial court that plaintiff's desire to prevent competition was an illegal restraint of trade, it has not made that argument to this court and, therefore, that question is not before this court.

that it was an invalid penalty because of its application to the purchase of equipment clause:

"Where a contract contains several covenants, and the stipulated forfeiture is applicable alike to each covenant, and would become due on the breach of a single covenant, and is clearly a penalty as to any one covenant, it will be held a 'penalty' as to all covenants." *Blockberger, supra,* at paragraph four of the syllabus.

In this case, based upon the decision in *Blockberger,* had the contract at issue contained separate clauses, one of which provided that it would be a breach of contract if the SS Leon Fraser were placed back in service on the Great Lakes carrying iron ore in competition with plaintiff, and the other of which provided that it would be a breach of contract if the SS Leon Fraser were placed back into commerce any place in the world carrying any product not in competition with plaintiff, and if the contract further provided for stipulated damages of $50,000 upon the breach of either clause, the stipulated damages clause would be a penalty in regard to both. Not only would it be invalid in a case like the present, it would also be invalid in a case in which the plaintiff suffered actual damages. Such a difference in result would be absurd. Under the rule established in *Blockberger,* the breaching party searches for a hypothetical scenario pursuant to which it was predictable at the time of contracting that no damages would result from an imagined breach; under the rule argued for by the plaintiff in this case, the nonbreaching party searches for a hypothetical scenario pursuant to which it was predictable at the time of contracting that damages would result from an imagined breach. Under both, the facts regarding the breach that actually occurred are irrelevant.

The court in *Snarr,* in reaching its conclusion that the stipulated damages clause there at issue was a penalty, cited and relied upon Section 356 of the Restatement of the Law 2d, Contracts. That section establishes a two-factor analysis for determining whether a stipulated damages clause provides a penalty or liquidated damages. Those two factors are (1) the amount of the anticipated or actual loss, and (2) the difficulty of proof of the actual loss:

"(1) Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty." *Id.*

In considering the first factor relevant according to the Restatement, a stipulated damages clause can be validated based upon either what the parties anticipated at the time of contracting or upon what the facts proved to be. As explained in the comments to Section 356:

"The first factor is the anticipated or actual loss caused by the breach. The amount fixed is reasonable to the extent that it approximates the actual loss that has resulted from the particular breach, even though it may not approximate the loss that might have been anticipated under other possible breaches. * * * Furthermore, the amount fixed is reasonable to the extent that it approximates the loss anticipated at the time of the making of the contract, even though it may not approximate the actual loss." Restatement of the Law 2d (1981), Contracts, Section 356, Comment *b.*

For purposes of the second factor of the restatement test, the difficulty of proof of loss, only the time of the proof is relevant. If actual damages are easily provable, the purpose of contract law to place the nonbreaching party in the position he would have been in if the breaching party had fully performed is best accomplished by allowing recovery of those actual damages. The determination of whether a particular stipulated damages clause may be upheld or must be struck down depends on a combination of both factors stated in Section 356:

"The second factor is the difficulty of proof of loss. The greater the difficulty either of proving that loss has occurred or of establishing its amount with the requisite certainty * * *, the easier it is to show that the amount fixed is reasonable. To the extent that there is uncertainty as to the harm, the estimate of the court or jury may not accord with the principle of compensation any more than does the advance estimate of the parties. A determination whether the amount fixed is a penalty turns on a combination of these two factors. If the difficulty of proof of loss is great, considerable latitude is allowed in the approximation of anticipated or actual harm. If on the other hand, the difficulty of proof of loss is slight, less latitude is allowed in that approximation. If, to take an extreme case, it is clear that no loss at all has occurred, a provision fixing a substantial sum as damages is unenforceable." Restatement of the Law 2d (1981), Contracts, Section 356, Comment *b.*

Considering the first factor in this case, although the stipulated damages amount of $50,000 does not approximate the actual loss of zero, assuming that plaintiff is correct and that those stipulated damages could be found to approximate the loss that was anticipated at the time the contract was executed, the stipulated damages clause at issue would survive the first factor set forth in Section 356. In regard to the second factor, however, plaintiff's actual loss is not difficult to prove at all. The undisputed evidence shows it to be zero. Accordingly, the stipulated damages clause in this case imposes a penalty and the trial court correctly found it invalid. See Restatement, *supra,* Section 356, Comment *b* at Illustration Four.

I find the Restatement analysis easier to apply and more in keeping with the purpose of contract law, to place the nonbreaching party in the position he would

have been in if the breaching party had fully performed, than the three-part test previously stated in some Ohio cases. In regard to plaintiff's assignments of error, I would overrule the first, because I believe that the trial court correctly examined the question of whether the plaintiff suffered actual damages from the perspective of the time of the breach. I would overrule the second because the trial court's asserted "implicit" adding "an unwritten requirement that for the clause to take effect, the vessel must have been subsequently used in competition with the [defendant's] lake shipping activities," was simply a different way of saying that, in the absence of the boat being used in competition with plaintiff's boats, plaintiff had suffered no injury.

### III. Conclusion

Based on the foregoing, I would affirm the decision of the Lorain County Court of Common Pleas.