MIDAMCO, LIMITED PARTNERSHIP, a.k.a. Mid–
American Management Corporation, Appellant,

v.

FASHION BUG OF SOLON, INC., Appellee.

[Cite as *Midamco, L.P. v. Fashion Bug of Solon, Inc.* (1996), 116 Ohio App.3d 854.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 70624.

Decided Dec. 23, 1996.

*Ulmer & Berne P.P.L.* and *Marvin L. Karp,* for appellant.

*Larry R. Rothenberg,* for appellee.

JAMES D. SWEENEY, Presiding Judge.

Plaintiff-appellant/landlord-lessor Midamco, an Ohio limited partnership, a.k.a. Mid–American Management Corporation, appeals from the decision of the municipal court in this forcible entry and detainer action. For the reasons adduced below, we affirm.

A review of the record on appeal indicates that Midamco is the owner of Solon Square Shopping Center. In 1986, Midamco leased space at the shopping center to defendant-appellee/tenant-lessee Fashion Bug of Solon, Inc. ("Fashion Bug"), a retail provider of women's wear. The lease between the parties, which was prepared by Midamco, contained the following pertinent provision:

"12.17   Other Women's Wear Stores:

"Within one year following the opening in the Shopping Center of any retail women's wear store *selling large or half-size* merchandise, Tenant shall have the option, upon thirty (30) days written notice to Landlord of either (1) terminating the within lease or, (2) remaining on the Leased Premises and paying, in lieu of Fixed Minimum Rent, Percentage Rent, and all other charges due hereunder, Percentage Rent only equal to three (3%) percent of Gross Sales (as herein defined). In the event Tenant elects to terminate the Lease, Landlord shall

execute a release prior to Tenant's vacating the Leased Premises and neither party shall have any further obligation to the other." (Emphasis added.)

In August 1993, Midamco leased another space in the shopping center to Bobbi Gee Toledo, Inc., which operated a purveyor of men's, women's and children's wear at the space under the store name "Eliza B." This store did not sell women's wear in large or half-size merchandise, so Section 12.17 was not implicated at that time.

In September 1994, Bobbi Gee Toledo, Inc. closed the Eliza B store and, a month later, reopened the store under the name "Dot's," a women's wear store that did sell large and half-size merchandise.

In November 1994, defendant notified plaintiff that it regarded the Dot's store selling practice as a violation of Section 12.17 of the lease and invoked the percentage rent option provided in that section for future lease payments. Beginning with the December 1994 lease payment, defendant stopped sending the normal monthly lease payment of approximately $6,500 and began paying the percentage option amount under Section 12.17, which amounted to approximately $1,700 per month. At the time, the lease term had thirty-six months remaining under its second five-year lease term under the percentage option claimed by defendant.[1] Therefore on the remaining thirty-six months of the second five-year term of the lease, plaintiff's lease payments from the defendant were reduced by $172,800 (36 months × $4,800 = $172,800). Plaintiff refused to accept this reduced lease payment amount and neither negotiated the checks nor deposited them into an account. Plaintiff took the position that the percentage option was not available to defendant and that defendant was in default under the terms of the lease for failing to pay the more lucrative lease payment amount; thereby, plaintiff incurred a penalty in the substantial foregone lease amounts.

Subsequent negotiations between the parties failed to resolve the issue. In September 1995, plaintiff filed its complaint for forcible entry and detainer against defendant. A copy of the lease is attached to this complaint. Defendant answered and filed a counterclaim for declaratory judgment.

Pursuant to the local rules of the trial court, the matter was heard by a magistrate on the basis of stipulated facts and the briefs of the parties. On March 8, 1996, the magistrate issued his decision, declaring that Section 12.17 of the lease did not give rise to a penalty under the facts presented and that plaintiff

---

1. Defendant's initial lease term was for five years with the option to renew for two more terms of five years apiece. If the options to renew are exercised, the total lease term will be fifteen years (three consecutive five-year terms). The second term commenced on February 1, 1992 and ends on January 31, 1997. The third term, if exercised by defendant, commences on February 1, 1997 and ends on January 31, 2002.

was equitably estopped from arguing that issue. Specifically, the magistrate declared that "the amount to be paid by defendant in percentage rent is [not] so manifestly inequitable and unrealistic for the court to regard this as a penalty." Additionally, the magistrate determined that defendant was not in default of its lease obligations and "that it is entitled to pay rent in accordance with Section 12.17 of the Lease, throughout the remainder of the Lease term or until the retail store presently occupying retail space in the shopping center, selling large and half size merchandise, vacates the premises and/or is no longer selling same."

Plaintiff filed objections to the magistrate's decision. On April 5, 1996, the trial court denied plaintiff's objections, approved the magistrate's decision, and entered judgment in favor of defendant on the complaint and the counterclaim. In short, Fashion Bug prevailed completely at the trial court level. This appeal by plaintiff-appellant-lessor, submitted on the briefs of the parties who waived oral argument, followed, presenting two assignments of error.

## I

"The court below erred in holding that Section 12.17 of the lease, as applied by defendant, does not give rise to unquestionably large liquidated damages and does not impose a penalty."

■ In this assignment, appellant argues that the application of Section 12.17 of the lease results in defendant's obtaining unreasonably large "liquidated damages" from plaintiff-appellant in the form of reduced lease payments due to Dot's selling of large and half-size merchandise. It is argued that these reduced lease payments pursuant to Section 12.17 represent a penalty provision with regard to plaintiff, that this "penalty" is unreasonable to plaintiff, and that it is therefore unenforceable. While we find that the trial court came to the right conclusion, we do so for reasons other than those advanced by the trial court.

Appellant mischaracterizes Section 12.17 of the lease as a "liquidated damages" or damages provision.

Appellant cites a number of cases involving liquidated damage provisions contained in a variety of contracts. See *Lake Ridge Academy v. Carney* (1993), 66 Ohio St.3d 376, 613 N.E.2d 183 (Where defendant-appellant-father failed to timely notify the plaintiff-appellee-school of cancellation of the intended enrollment of the prospective student by a date certain, liability for payment of the contract was not absolved.); *Samson Sales, Inc. v. Honeywell, Inc.* (1984), 12 Ohio St.3d 27, 12 OBR 23, 465 N.E.2d 392 (specific liquidated damages clause contained in a contract for installation and service of a burglar alarm system by Honeywell at plaintiff's pawn shop held to be unenforceable as a penalty when the system failed with resulting damage to the property owner); *Cad Cam, Inc. v.*

*Underwood* (1987), 36 Ohio App.3d 90, 521 N.E.2d 498 (covenant not to compete clause in an employment contract that required the employee, if he obtained a similar job at a competing employer, to pay the former employer one-half of his annual base salary held to be unenforceable as a penalty); *Lakewood Creative Costumers v. Sharp* (1986), 31 Ohio App.3d 116, 31 OBR 202, 509 N.E.2d 77 (liquidated damages clause in a costume rental contract, which provided that the renter was liable for one-half the rental fee for each day past the date the costume was due to be returned, held to be unenforceable as a penalty); *Berlinger v. Suburban Apt. Mgmt. Co.* (1982), 7 Ohio App.3d 122, 7 OBR 155, 454 N.E.2d 1367 (provision in an apartment rental lease, requiring liquidated damages in favor of the landlord in the amount of $50 for each time the tenant brings a motorcycle onto the premises, held to be unenforceable); *Snarr v. Picker Corp.* (1985), 29 Ohio App.3d 254, 29 OBR 317, 504 N.E.2d 1168 (provision in an employment profit-sharing plan, requiring the employee to forfeit his share in the plan if the employee were to be employed by a competitor of Picker within two years of termination from Picker, held to be unenforceable as a penalty); *Am. Fin. Leasing Serv. Co. v. Miller* (1974), 41 Ohio App.2d 69, 70 O.O.2d 64, 322 N.E.2d 149 (stipulated damages provision in an equipment lease, requiring the lessee upon default to pay the lessor an amount equal to ten percent of the cost of the lease, held to be unenforceable as a penalty).

The common thread in these cases cited by appellant is that the contracts at issue were prepared by the lessor, the employer, educational institution or equipment provider, and the respective liquidated damages provision inured to the economic benefit of those entities upon a default or breach of the contract by the other contracting party. In the case *sub judice,* the contract was prepared by the lessor, but the economic benefit in the application of Section 12.17 inures to the benefit of the lessee, not the lessor. Additionally, the traditional stipulated damage cases require the default to be occasioned by the actions of, for our purposes, the lessee. Yet, in the present case, the lessee did not implicate Section 12.17. Accordingly, reliance upon the Restatement of the Law and reliance on the cases cited by appellant, which are traditional liquidated damage cases, are factually distinguishable from the present case.

Our determination that this provision, Section 12.17, does not involve a damages issue is also supported by the lack of any mention of "damages" in the title or language of Section 12.17. Furthermore, to interpret Section 12.17 as a damages provision is preposterous. The lease at issue was prepared by Midamco, a presumably savvy and experienced commercial operation. It is inconceivable that such a business entity would specifically provide in its lease a provision which, if implicated, would cause a penalty to itself and for which relief would be anticipated.

Instead, Section 12.17 represents an optional provision in the contract, implicated by a specific occurrence (in another store opening and selling like merchandise to defendant's), to provide relief (in the form of decreased rent or allowing the tenant to terminate the lease) to an existing tenant of exclusive merchandise at the shopping center for the presumed decrease in profitability to the existing tenant's bottom line caused by the introduction of a direct competitor on the premises.

Accordingly, the first assignment of error is overruled.

## II

"The court below erred in holding that the doctrine of equitable estoppel is applicable to this case."

In the trial court, Midamco argued that Section 12.17 was an unenforceable penalty clause. Fashion Bug argued that Midamco was equitably estopped from denying enforcement of the percentage rent option because Fashion Bug sought such a provision in all its leases around the country and would not have entered into this lease without such a provision being included. The trial court magistrate, who considered the stipulation of facts in making its decision, stated the following in his report and recommendation relative to the equitable estoppel argument:

"In conclusion, it is the Magistrate's opinion that defendant Fashion Bug has not breached the terms and conditions of the lease for non-payment of rent and has continued the payment of rent in a timely fashion in accordance with the provisions of Section 12.17 of the Lease, as interpreted by defendant, which allows it to pay percentage rent because another retail store is selling large and half-size merchandise. In addition to the Magistrate finding that the liquidated damages provision is not enforceable because it is not a 'penalty,' *the Magistrate also finds that the plaintiff is barred by the doctrine of equitable estoppel from challenging the enforceability of Section 12.17 because it now finds this provision inconvenient.*" (Emphasis added.)

The following was stated in *Frauenthal v. Burke* (Mar. 21, 1991), Cuyahoga App. No. 58319, unreported, 1991 WL 39781, citing *First Fed. S. & L. Assn. v. Perry's Landing, Inc.* (1983), 11 Ohio App.3d 135, 145, 11 OBR 215, 226, 463 N.E.2d 636, 647:

"The doctrine of equitable estoppel is defined, in pertinent part, as follows:

"[O]ne party will not be permitted to deny that which, by his words, his acts or his silence * * *, has induced a second party reasonably and in good faith to assume and rely upon to that party's prejudice or pecuniary disadvantage."

The record on appeal clearly demonstrates through the stipulation of facts that Fashion Bug detrimentally relied upon the inclusion of Section 12.17's options in the lease. To avoid the application of Section 12.17 would cause injury to Fashion Bug in not allowing it to get the benefit of its bargain in the form of the election to pay reduced rent while concurrently having its exclusive merchandising position at the shopping center devalued by the operation of its direct competitor. We find no error in the trial court's determination that the doctrine of equitable estoppel is applicable in this case.

The second assignment of error is overruled.

*Judgment affirmed.*

KARPINSKI, J., concurs.

PATRICIA A. BLACKMON, J., concurs in judgment only.