SKILTON, APPELLEE, *v.* PERRY LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, APPELLANT.

[Cite as *Skilton v. Perry Local School Dist. Bd. of Edn.,* 102 Ohio St.3d 173, 2004-Ohio-2239.]

(No. 2003–0147—Submitted November 19, 2003—Decided May 19, 2004.)

O'CONNOR, J.

I

{¶ 1} In June 1999, the Perry Local School District Board of Education hired Christina Skilton to teach a fourth-grade class for the 1999–2000 school year. Although Skilton had previously worked as a long-term substitute for a neighboring school district, the Perry Schools position was her first employment in a permanent full-time teaching capacity. As a first-year teacher, Skilton was employed under a one-year limited contract pursuant to R.C. 3319.11.

{¶ 2} Three to four weeks into the school year, Skilton underwent her first performance evaluation. The performance review was generally positive but warned that Skilton "sometimes put[s] an incredible amount of pressure on" herself. Skilton testified that the source of the stress was her perfectionism. She was concerned that not all of her students would earn high grades throughout the school year. Skilton's stress, which caused her to lose a significant amount of weight, came to a head on Wednesday, October 20, 1999, when Skilton suffered a 14–hour panic attack. Soon thereafter, Skilton requested, and was granted, a one-year unpaid medical leave of absence effective October 25, 1999. A long-term substitute was hired to temporarily replace Skilton.

{¶ 3} In December, Skilton contacted the school board to request reinstatement effective January 19, 2000. Skilton's mental health provider approved her return to teaching. The board agreed to Skilton's return and prepared accordingly.

{¶ 4} Sometime before January 19, Skilton decided that she should not return to work for the remainder of the 1999–2000 school year. The parties dispute whether Skilton notified the board of the change before January 19. In any event, Skilton's mental health provider wrote a second letter, this time stating that continued medical leave remained in Skilton's best interest. The board acquiesced in Skilton's decision, allowing her to remain on leave.

{¶ 5} On April 18, 2000, less than five months after granting Skilton's one-year medical leave, the board decided not to renew Skilton's limited contract. Skilton requested an explanation of the nonrenewal, pursuant to R.C. 3319.11(G)(1), as explained by this court's decision in *Geib v. Triway Local School Dist. Bd. of Edn.* (1999), 84 Ohio St.3d 447, 705 N.E.2d 326. The board provided three reasons: "1. Your long-term absence during the 1999–2000 school year was excessive. 2. Your excessive absence caused an interruption in the continuity of service to your elementary students. 3. As a consequence of your extended absence, the Board was prevented from completing the evaluation process." The school's outgoing principal verbally advised Skilton that he recommended nonrenewal because he thought she was unprepared for the stresses of teaching and because he did not want his replacement to inherit Skilton's problems. Skilton requested a hearing before the school board pursuant to R.C. 3319.11(G)(3). The hearing was conducted on September 28, 2000, and concluded with the board affirming the nonrenewal.

{¶ 6} Skilton appealed to the Lake County Court of Common Pleas on October 26, 2000. The trial court found that the board had violated R.C. 3319.11(E) and 3319.111(A) by not renewing Skilton's contract without completing a second evaluation. The trial court ordered Skilton reinstated. The Eleventh District Court of Appeals affirmed. This case is now before us as a discretionary appeal.

II

{¶ 7} The General Assembly has enacted detailed statutes regulating the employment of public school teachers. See, e.g., R.C. 3319.072 (establishing minimum lunch breaks for teachers). A board may terminate a teacher only as expressly permitted by R.C. Chapter 3319. The board terminated Skilton's employment under R.C. 3319.11(E). This statute permits a school board to terminate a limited-contract teacher's employment without cause, but only if the required procedures are followed, including the evaluation procedures set forth in R.C. 3319.111. R.C. 3319.111(A) requires that the school conduct a minimum of two evaluations of the teacher's performance. One must be conducted on or before January 15, and the second "shall be conducted and completed between the tenth day of February and the first day of April." R.C. 3319.111(A).

{¶ 8} Although the board evaluated Skilton once before January 15, it did not evaluate her between February 10 and April 1 because she was on an approved medical leave of absence. The board argues that Skilton's medical leave excuses it from complying with R.C. 3319.111(A).[1] We disagree.

{¶ 9} The board asserts that failure to conduct the second evaluation is excused when the teacher is unavailable for evaluation in the narrow time frame allotted by R.C. 3319.111(A). R.C. 3319.13 governs a teacher's leave of absence and states, "Upon the written request of a teacher * * *, a board of education * * * shall grant [a leave of absence of not more than two consecutive school years] where illness or other disability is the reason for the request. * * * Upon the return to service of a teacher * * * at the expiration of a leave of absence, the teacher * * * shall resume the contract status that the teacher * * * held prior to the leave of absence."

{¶ 10} The board argues that because R.C. 3319.13 grants it no discretion in approving a medical or disability leave of absence, a school board should be able to terminate a teacher who is on medical or disability leave. We recently addressed a similar issue in *Coolidge v. Riverdale Local School Dist.*, 100 Ohio St.3d 141, 2003–Ohio–5357, 797 N.E.2d 61. In *Coolidge*, a continuing-contract teacher was granted one year of unpaid medical leave. While the teacher

---

1. The court of appeals dismissed this argument on the grounds that impossibility of performance does not excuse compliance with statutory mandates. We disagree. The statutes at issue govern employment relationships, which are contractual in nature. The statutes are simply incorporated into the contract. *Jacot v. Secrest* (1950), 153 Ohio St. 553, 558, 42 O.O. 31, 93 N.E.2d 1 (" 'A contract made in pursuance of a statute or resolution, must be construed as though such statute or resolution had been incorporated into such contract' "), quoting *Banks v. De Witt* (1884), 42 Ohio St. 263, paragraph two of the syllabus. Contracts are susceptible of the defense of impossibility. *Brown v. Donders* (1975), 42 Ohio St.2d 133, 71 O.O.2d 112, 326 N.E.2d 647.

remained on leave, the board terminated the teacher's employment under R.C. 3319.16, which permits termination for "good and just cause." The reason the board gave for the termination was the teacher's inability to teach. Although our opinion focused upon the teacher's condition of temporary total disability under worker's compensation law, in both *Coolidge* and the case sub judice, a school board terminated a teacher for excessive absences during the teacher's excused medical leave.

{¶ 11} Consistent with *Coolidge*, we hold that a teacher's medical leave of absence does not excuse a school board from complying with R.C. 3319.111. To hold otherwise would ignore the clear language of R.C. 3319.111 and impinge upon R.C. 3319.13. This statute clearly calls for a teacher to be returned to the same employment status following a leave of absence that the teacher held prior to the leave. Thus, R.C 3319.13 contradicts the board's position. R.C. 3319.13 requires that Skilton be returned to the classroom as a first-year limited-contract teacher. The evaluation process will continue at that time.

{¶ 12} We remain mindful that while requiring strict compliance, "R.C. 3319.111 was not designed to create an obstacle course for school boards to traverse before they can fire a teacher." *Snyder v. Mendon–Union Local School Dist. Bd. of Edn.* (1996), 75 Ohio St.3d 69, 72, 661 N.E.2d 717. If R.C. 3319.111 becomes too much of an obstacle course, R.C. 3319.11 vests a trial court with discretion to determine whether to order reemployment.[2]

{¶ 13} To determine whether the trial court abused its discretion, we turn to the three interrelated reasons the board gave for not renewing Skilton's contract.[3] "1. Your long-term absence during the 1999–2000 school year was excessive. 2. Your excessive absence caused an interruption in the continuity of service to your elementary students. 3. As a consequence of your extended absence, the Board was prevented from completing the evaluation process." The three stated causes for nonrenewal can be synthesized to one: an excessive absence. This leads us once again to R.C. 3319.13. As mentioned above, Skilton's absence was a board-approved one-year leave of absence authorized by R.C. 3319.13. Only six months of the one-year leave had expired at the time of the nonrenewal. The exercise of a statutorily allotted leave of absence is not grounds for termination. *Coolidge v. Riverdale Local School Dist.*, 100 Ohio St.3d 141, 2003–Ohio–5357, 797 N.E.2d 61. Therefore, the trial court did not abuse its discretion when it ordered Skilton to be reemployed.

---

2. "[T]he court *may* order a board to reemploy a teacher * * * when the court determines that evaluation procedures have not been complied with pursuant to" R.C. 3319.111(A). (Emphasis added.) R.C. 3319.11(G)(7).

3. Had the board complied with R.C. 3319.111, R.C. 3319.11(G)(7) would have expressly precluded us from considering its rationale.

{¶ 14} The board argues that this ruling would permit a limited-contract teacher to avoid termination by removing "herself from the workforce during one or both of the evaluation periods." That is not the case. It is true that a school board must approve a teacher's medical leave of absence, but only where "illness or other disability *is the reason for the request.*" (Emphasis added.) R.C. 3319.13. A school board retains several tools to address employment situations where necessary. For instance, if a school board complies with R.C. 3319.11 prior to a leave of absence, a nonrenewal could withstand scrutiny. See, e.g., *Murray v. Washington Local School Dist. Bd. of Edn.* (July 11, 1986), Lucas App. No. L–85–159, 1986 WL 7629. Additionally, R.C. 3319.16 remains available to terminate employees "for willful and persistent violations of reasonable regulations of the board of education; or for other good and just cause"—including, presumably, dishonestly obtaining a leave of absence. Finally, if a school board is concerned that a teacher will not physically or mentally be able to return to the classroom after a leave of absence, it has the option of extending the leave under R.C. 3319.13. It is not the role of the courts to question the public policy values of a legislatively enacted statutory scheme. We are limited to applying the statutes as written and passing upon the constitutionality thereof. The board raises no issue of constitutionality concerning the unlikely scenario it proffers in which a teacher consecutively, legitimately misses either the entire first semester or February 10 through April 1, thereby gaining tenure and not being subject to termination without cause.

{¶ 15} Further, we are not persuaded by the board's argument that it should be allowed not to renew Skilton's contract because it lacked sufficient data to conclude that she should be retained. Again, this is a policy argument which is not for this court to decide. But if this argument is true, the logical corollary is that the board also lacked sufficient data to conclude that she should *not* be retained. If Skilton was able, and permitted, to return to the classroom in the 2000–2001 school year, she would have been considered a first-year limited-contract teacher. The board would have been able to fully evaluate her at that time. This is what the statute demands.

{¶ 16} While we do not necessarily disagree with amicus curie Ohio School Boards Association's argument that R.C. 3319.13 does not create a substantive right to return to duty under every circumstance, the mere exercise of leave, without more, cannot be grounds for nonrenewal or termination.

III

{¶ 17} The General Assembly enacted in the State Teacher Tenure Act, R.C. Chapter 3319, procedural mechanisms to advantage public school teachers in

relations with their employers. It is not the role of this court to pass upon the fairness of this chapter as the appellant asks us to do. Absent a constitutional deficiency, courts are, and must be, limited to interpreting and applying a statute as written. This we do today. If appellant and its amicus find a statute not to their liking, they may seek recourse at the General Assembly.

{¶ 18} The board improperly decided not to renew Skilton's limited contract under R.C. 3319.11 while she was on protected leave under R.C. 3319.13. The trial court correctly ordered her reemployed as a first-year limited-contract teacher awaiting evaluations—the status provided her by R.C. 3319.13. The case is remanded to the trial court for computation of any back-pay award.

Judgment affirmed
and cause remanded.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON and O'DONNELL, JJ., concur.

---

Macala, Baasten, McKinley & Gore, L.L.C., and Kathleen K. McKinley, for appellee.

Means, Bichimer, Burkholder & Baker Co., L.P.A., Richard W. Ross and Rachel A. Leier, for appellant.

Macala, Baasten, McKinley & Gore, L.L.C., and Cornelius J. Baasten, urging affirmance for amicus curiae Ohio Education Association.

Bricker & Eckler, L.L.P., and Kimball H. Carey, urging reversal for amicus curiae Ohio School Boards Association.