KUPTZ, Appellant,

v.

YOUNGSTOWN CITY SCHOOL DISTRICT BOARD
OF EDUCATION et al., Appellees.

Brocker, Appellee,

v.

Youngstown City School District Board Of Education, Appellant.

[Cite as *Kuptz v. Youngstown City School Dist. Bd.*
*of Edn.*, 175 Ohio App.3d 738, 2008-Ohio-1676.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

Nos. 07 MA 25 and 07 MA 72.

Decided March 24, 2008.

Green, Haines, Sgambati Co., L.P.A., Ira J. Mirkin, and Charles W. Oldfield, for Charles Kuptz and Kathy Brocker.

Roth, Blair, Roberts, Strasfeld & Lodge Co., James E. Roberts, and John R. Tullio Jr., for Youngstown City School District Board of Education, et al.

---

DeGenaro, Judge.

{¶ 1} In this opinion, we will address two appeals that address the same basic legal issues, even though we must address them from two slightly different factual positions. They timely come for consideration upon the records in the trial court, the parties' briefs, and their oral arguments before this court.

{¶ 2} In 07 MA 25, plaintiff-appellant, Charles Kuptz, is appealing the trial court's refusal to order defendant-appellee, the board of education, to renew his contract because it substantially complied with the requirements for evaluating a teacher's performance. In 07 MA 72, defendant-appellant, the Youngstown City School District Board of Education, argues that the trial court erred when it ordered that the board of education renew the contract of plaintiff-appellee, Kathy Brocker, since it did not strictly comply with the requirements for evaluating a teacher's performance.

{¶ 3} Each of the teachers was employed under the same teaching contract, which required that the teacher be given the results of an evaluation within five workdays. In each of these cases, the board of education complied with that requirement, so it could properly refuse to renew the contracts of both of these teachers. Accordingly, the trial court's decision in 07 MA 25 is affirmed. The trial court's decision in 07 MA 72 is reversed, and judgment is granted to the board of education.

## Facts in 07 MA 25

{¶ 4} Kuptz is a certified school teacher who was employed by the board of education under a limited contract for the 2005–2006 school year. Pursuant to statute, he was to be evaluated by school personnel twice during the school year. The board of education's contract with the local teacher's union stated that an "observation report" would be prepared after each evaluation and that "[t]he evaluator shall hold a conference with the employee observed, within five (5) workdays of the observation, during which time the employee shall be given a copy of the observation report." A "workday" was defined as "[a] day on which an employee is scheduled to report for work."

{¶ 5} On December 8, 2005, Kuptz was observed for the purposes of evaluating his teaching skills. The fifth day that the school was open after this evaluation was December 15, 2005, but Kuptz called off work on that day. Accordingly, the evaluator did not meet with Kuptz until December 16, 2005.

{¶ 6} On April 25, 2006, the board of education voted to not renew Kuptz's teaching contract for the 2006–2007 academic year and sent him a written notification of this decision. Kuptz demanded a hearing, challenging this decision, which was held on June 8, 2006. On June 15, 2006, the board of education affirmed its prior decision. Kuptz appealed that decision to the trial court, which affirmed the board of education's decision on January 10, 2007.

### Facts in 07 MA 72

{¶ 7} Brocker is a certified school teacher who was employed by the board of education under a limited contract for the 2005–2006 school year. The same contract between the board of education and the local teacher's union that governed Kuptz's employment governed Brocker's employment.

{¶ 8} Brocker was evaluated twice during the 2005–2006 school year. On the fifth day after the first evaluation was completed, the school was closed due to a heating problem because the boiler had exploded. Brocker met with the evaluator on the next day, when the school was reopened. Brocker was evaluated a second time on Thursday, March 30, 2006. Brocker was scheduled to take a personal leave from Monday, April 3, to Friday, April 7, to attend a nonschool related conference in San Diego, California. The evaluator did not schedule a conference with Brocker before she left. Instead, the conference was held on Monday, April 10, 2006, on the first day the school was open after Brocker returned from her leave.

{¶ 9} On April 25, 2006, the board of education voted to not renew Brocker's teaching contract for the 2006–2007 academic year and sent her a written notification of this decision. Broker demanded a hearing, challenging this decision, which was held on June 14, 2006. On June 16, 2006, the board of education affirmed its prior decision. Brocker appealed that decision to the trial court, which ordered that the board of education reemploy Brocker for the 2006–2007 academic year on March 20, 2007.

### Assignments of Error and Standard of Review

{¶ 10} Kuptz's sole assignment of error in 07 MA 25 argues:

{¶ 11} "The trial court erred when it affirmed the School Board's decision to non-renew Appellant's contract."

{¶ 12} The board of education's sole assignment of error in 07 MA 72 argues:

{¶ 13} "The trial court erred when it reversed the Board's decision to non-renew Appellee's limited teaching contract."

{¶ 14} Our standard of review in these cases is governed by R.C. 3319.11(G)(7). That statute provides:

{¶ 15} "A teacher may appeal an order affirming the intention of the board not to reemploy the teacher to the court of common pleas of the county in which the largest portion of the territory of the school district or service center is located, within thirty days of the date on which the teacher receives the written decision, on the grounds that the board has not complied with section 3319.11 or 3319.111 of the Revised Code.

{¶ 16} "Notwithstanding section 2506.04 of the Revised Code, the court in an appeal under this division is limited to the determination of procedural errors and to ordering the correction of procedural errors and shall have no jurisdiction to order a board to reemploy a teacher, except that the court may order a board to reemploy a teacher in compliance with the requirements of division (B), (C)(3), (D), or (E) of this section when the court determines that evaluation procedures have not been complied with pursuant to division (A) of section 3319.111 of the Revised Code or the board has not given the teacher written notice on or before the thirtieth day of April of its intention not to reemploy the teacher pursuant to division (B), (C)(3), (D), or (E) of this section. Otherwise, the determination whether to reemploy or not reemploy a teacher is solely a board's determination and not a proper subject of judicial review and, except as provided in this division, no decision of a board whether to reemploy or not reemploy a teacher shall be invalidated by the court on any basis, including that the decision was not warranted by the results of any evaluation or was not warranted by any statement given pursuant to division (G)(2) of this section.

{¶ 17} "No appeal of an order of a board may be made except as specified in this division."

{¶ 18} As can be seen, the statute states that a trial court "may" order a school board to reemploy a teacher in certain circumstances. The use of the word "may" in a statute denotes the granting of discretion. *Dorrian v. Scioto Conservancy Dist.* (1971), 27 Ohio St.2d 102, 108, 56 O.O.2d 58, 271 N.E.2d 834. When applying this statute, the Ohio Supreme Court has reviewed a trial court's decision for an abuse of discretion. See *Skilton v. Perry Local School Dist. Bd. of Edn.*, 102 Ohio St.3d 173, 2004-Ohio-2239, 807 N.E.2d 919, at ¶ 13. Accordingly, we will reverse the trial court's decision only if its judgment shows that its attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. An appellate court may not substitute its judgment for that of the trial court when applying this standard. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.

## Contract Construction

{¶ 19} The teachers' claim in both cases is that the board of education did not comply with the evaluation procedures that the board of education had

adopted pursuant to R.C. 3319.111(B). The board of education claims, among other things, that it did comply with the procedures it had adopted because it provided these teachers with their evaluations on the fifth day that the teacher worked after the evaluation. Although the parties have raised multiple issues in this appeal, this particular argument presents us with a fairly straightforward issue of contractual construction.

{¶ 20} The contract between the board of education and the local teachers' union adopted the procedures to be used when evaluating teachers under R.C. 3319.111. That agreement states that the person evaluating the teacher shall prepare an observation report and "shall hold a conference with the employee observed, within five (5) workdays of the observation, during which time the employee shall be given a copy of the observation report." The agreement defined "workday" as "[a] day on which an employee is scheduled to report for work."

{¶ 21} The board of education claims that an employee is "scheduled to report for work" if that employee does not have an approved absence from the school on the day in question. Thus, Kuptz was not "scheduled to report for work" on the day he called off work, because his absence was approved by the school. Likewise, Brocker was not "scheduled to report for work" on either the day of the boiler problem or the days she was out of town, because her absences on each day were approved.

{¶ 22} The teachers maintain that the board of education's argument amounts to redefining "workday" to mean "a day on which the employee reports to work." The teachers believe that an employee is "scheduled to report for work" on any day that in the absence of extraneous circumstances, the teacher would otherwise have to be at the school. According to this argument, a day counts as a workday even if the teacher had scheduled a day off for that day two months beforehand, because the teacher must use a personal day in order to be entitled not to report to work that day. Likewise, the day of the boiler problems was a workday because Brocker was scheduled to work that day before the heating problems occurred.

{¶ 23} The construction of written contracts is generally a matter of law. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. The purpose of contract construction is to discover and effectuate the intent of the parties, which is presumed to reside in the language they chose to use in the agreement. *Graham v. Drydock Coal Co.* (1996), 76 Ohio St.3d 311, 313, 667 N.E.2d 949. When the terms of a contract are unambiguous, courts look to the plain language of the document and interpret it as a matter of law. *Latina v. Woodpath Dev. Co.* (1991), 57 Ohio St.3d 212, 214, 567 N.E.2d 262. When looking at a contract's

language, the words used will be given their ordinary meaning unless manifest absurdity results or some other meaning is clearly evidenced from the face or overall contents of the instrument. *Shifrin v. Forest City Ents., Inc.* (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499. Such an interpretation is reviewed de novo. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684.

{¶ 24} In this case, the contract says that a day is a workday only if the teacher "is scheduled to report for work" that day. The teachers contend that this means that any day on which the teacher was ever scheduled to be at work is a workday. Thus, any day on which the teacher takes sick time or personal time would qualify as a work day. This interpretation of the contract would lead to an absurd result. Under the teachers' interpretation of the contract, a school would be required to provide a full-time teacher with the observation report within five school days after the evaluation, no matter what. Thus, a teacher could call off work for each of those five days, thereby avoiding the observation report within the required time, which would force the school's noncompliance with the five-workday requirement. The school and the teachers' collective-bargaining representative could not have intended such a result when they entered into the agreement.

{¶ 25} Instead, the most natural meaning of the words in the contract is the meaning advocated by the board of education. If a teacher uses a sick or personal time on a school day, then that teacher is not scheduled to report to work on that day. Likewise, if school is closed because of inclement weather or some other emergency situation, such as a boiler explosion, then the teacher is no longer scheduled to report for work on that day. When determining whether a teacher was scheduled to report to work on a particular school day, we must look to the parties' expectations on that day, not to some nebulous time before that day.

{¶ 26} If we apply this interpretation to both of these cases, then it is clear that the board of education complied with the terms of its contract with the local teachers' union. In 07 MA 25, Kuptz called off work on the fifth day after his evaluation. After he called off work that day, he was no longer scheduled to report to work that day and it was no longer a "workday" as that term is defined in the contract. He then met with the evaluator on the next school day, which would have been the fifth workday after Kuptz's evaluation. Thus, the board of education fully complied with its contractual obligations in 07 MA 25, and the trial court properly refused to order the board of education to renew Kuptz's contract.

{¶ 27} The same can be said of 07 MA 72. In that case, Brocker did not confer with her evaluator on the fifth day after her first evaluation because school was closed that day because the boiler had exploded. Because of this accident,

Brocker was no longer scheduled to report to work that day. Brocker met with her evaluator on the next day that school was opened, the fifth workday (as defined by the contract) after the evaluation was completed.

{¶ 28} Brocker also met with her evaluator after her second evaluation within five workdays of that evaluation. Brocker was evaluated on a Thursday and was scheduled to take personal leave the next week. She met with her evaluator the next Monday, which was only the second workday after the evaluation. Thus, the board of education fully complied with its contractual obligations in 07 MA 72, and the trial court erred when it ordered the board of education to renew Brocker's contract.

### Conclusion

{¶ 29} These two cases present the same basic issues, even though they arise out of slightly different facts and have different procedural histories. In each case, the teacher argues that the board of education violated the terms of its contract with the local teachers' union. However, the evidence produced in each case shows that the board of education complied with the plain language of that contract, and the board of education could properly elect not to renew these teachers' contracts. Accordingly, the judgment of the trial court in 07 MA 25 is affirmed. The judgment of the trial court in 07 MA 72 is reversed, and judgment is granted to the board of education.

Judgment accordingly.

VUKOVICH and WAITE, JJ., concur.