[Cite as *Harmon v. Haehn*, 2011-Ohio-6449.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| TERRY HARMON, et al., | ) | |
| | ) | CASE NO. 10 MA 177 |
| PLAINTIFFS-APPELLANTS, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| RUSSELL A. HAEHN, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:           Civil Appeal from Common Pleas
                                    Court, Case No. 08 CV 1504.

JUDGMENT:                           Affirmed.

APPEARANCES:
For Plaintiffs-Appellants:           Attorney Cherry Poteet
                                     Attorney Daniel Daniluk
                                     1129 Niles-Cortland Road, SE
                                     Warren, OH 44484

For Defendants-Appellees:            Attorney Stuart Strasfeld
                                     100 Federal Plaza East, Suite 600
                                     Youngstown, OH 44503

JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

                                     Dated: December 9, 2011

DeGenaro, J.

{¶1}     Plaintiffs-Appellants Terry Harmon, Terry Harmon Motors, Inc., and Harmon Used Car Outlet, Inc., (hereinafter "Harmon") appeal the October 8, 2010 judgment of the Mahoning County Court of Common Pleas declining to award $250,000 in damages as stipulated in the parties' commercial lease agreement and instead awarding $25,166 in actual damages.  The trial court correctly categorized the lease provision as a liquidated damages clause, and correctly decided that the provision constitutes an unenforceable penalty.  Accordingly, Harmon's sole assignment of error is meritless and the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶2}     The facts are generally undisputed.  On April 12, 2006, Haehn, as lessor, and Harmon as lessee entered into a contract, commencing May 15, 2006, whereby Harmon agreed to lease commercial property in Canfield from Haehn for a term of four years and eight months, with an option to extend.  At the heart of this appeal is a right of first refusal provision in the Lease, which was drafted by Haehn and added to the Lease as a result of the parties' negotiations.

{¶3}     "**Right of First Refusal**. In the event that the Lessor receives a bona fide written offer to purchase the Demised Premises that Lessor decides to accept, then Lessor shall provide Lessee with a copy of the bona fide written offer.  Lessee shall have the right, for a period of five (5) days after receipt of the bona fide offer, to purchase the Demised Premises at the same price and upon the same terms as contained in the bona fide written offer.  In the event that Lessee does not exercise its right of first refusal, the Lessor maintains the right to sell the property with the following provisions:  If the Lessor sells the property within the firs [sic] three (3) years of this lease and terminates said lease, Lessor agrees to pay Lessee $250,000.00 and Lessee will have (8) months to vacate property.  If the Lessor sells the property the last (2) years of the lease agreement and the lease is terminated, Lessor agrees to pay Lessee $200,000.00 and Lessee will have (8) months to vacate premises.  If lease is not terminated, no payment will occur. In the event Lessee exercises this right of first refusal, then Closing shall take place within a period of thirty (30) days after receipt by Lessor of Lessee's notice of its exercise of its

right of first refusal." (Lease, Article 28).

{¶4} Harmon planned to utilize the property for a used car dealership. Extensive renovations were necessary to achieve this goal because the prior lessee had used the property for a deli. However, contrary to Haehn's assertions, nothing in the Lease required Harmon to make any renovations; rather only to *maintain* the subject property:

{¶5} "**Maintenance of Demised Premises**. Lessee has inspected the Demised Premises and agrees to lease the same in its *"As Is"* condition, and without reliance upon any representations made by the Lessor and/or Lessor's agents and representatives. During the Term of this Lease:

{¶6} "A. * * *

{¶7} "B. Except as specifically designated in subparagraph "A" above as Lessor's responsibilities, Lessee covenants and agrees to maintain the Demised Premises, both interior and exterior, and every part thereof, and to make repairs thereto and replacements thereof * * * " (Lease, Article 9.)

{¶8} "**Alterations or Remodeling**. Lessee shall have the right, at its own cost and expense, to erect, install, maintain and operate on the Demised Premises such equipment, fixtures, alterations, and remodeling as Lessee may deem advisable as long as the alterations and remodeling are done in a good and workmanlike manner and in compliance with the law." (Lease, Article 10.)

{¶9} Further, the "Use" provision in the Lease does not mandate that Harmon use the property as a car lot. Rather, it requires only that he "use the Demised Premises in a careful, safe, sanitary and proper manner." (Lease, Article 2.) Contrary to Haehn's contentions, there are no mandatory or continuous use clauses in the Lease. The Lease provided a base monthly rent, which increased based upon the number of vehicles sold.

{¶10} By late October or early November of 2006, approximately six months after executing the Lease, Harmon had completed only minimal renovations and had not opened for business. Haehn discussed with Harmon terminating the Lease because he had a potential buyer for the property. Haehn received a bona fide offer from a third-party, Albert J. Gallo of AGPG Concepts, LLC, but did not communicate this offer to

Harmon. On September 4, 2006, Haehn entered into a contract with Gallo to sell the leased premises for $775,000.

**{¶11}** On November 12, 2006, Haehn presented Harmon with a Lease Termination Agreement, in which he sought to terminate the Lease, and to release himself from any liability arising out of the Lease, including any claim regarding the right of first refusal provision. Harmon refused to sign the termination agreement, but returned the keys to the building and vacated the premises. Haehn refused to pay Harmon the $250,000 as stipulated in Article 28 of the Lease. Haehn conveyed the property by general warranty deed to AGPG Concepts on April 4, 2007.

**{¶12}** During the Lease period, Harmon failed to make all of his rent payments on a consecutive monthly basis. In addition, although Harmon was responsible for paying all real estate taxes and utilities for the leased premises, he did not do so. However, Haehn never sent Harmon written notice of these defaults or gave Harmon an opportunity to cure, which was required pursuant to Article 21, the Lease default provision.

**{¶13}** On April 11, 2008, Harmon filed a Complaint against Haehn for breach of contract and declaratory judgment. Harmon also named AGPG Concepts as a defendant, but later voluntarily dismissed all claims against AGPG with prejudice.

**{¶14}** Harmon filed a motion for summary judgment on February 16, 2010, arguing there were no genuine issues of material fact regarding Haehn's breach of Article 28 of the Lease, and that as a matter of law, Harmon was entitled to damages in the amount of $250,000. Haehn filed a brief in opposition in which he argued that Harmon had anticipatorily repudiated the Lease by failing to pay rent, complete renovations and open for business. As to the damages issue, Harmon argued that the $250,000 sum was unenforceable as a penalty. Haehn replied, asserting, among other things, that Article 28 was a valid liquidated damages provision that the court should enforce.

**{¶15}** On June 8, 2010, the magistrate issued a decision concluding that Harmon was entitled to judgment as to liability, i.e., that Haehn had breached the Lease. However, the magistrate declined to adjudicate the issue of damages because "a liquidated damages provision must be reasonably proportionate to the loss suffered."

Accordingly, the magistrate set the matter for further hearing on damages.

**{¶16}** Both parties filed objections. The trial court overruled the objections and adopted the magistrate's decision, noting that the enforceability of the liquidated damages provision would be determined after further hearing.

**{¶17}** The matter proceeded to a damages hearing on August 27, 2010 where both Harmon and Haehn testified, along with Cheryl Zinns, comptroller for Harmon's businesses. Harmon presented evidence of the costs he incurred to renovate the property.

**{¶18}** On October 7, 2010, the magistrate issued a decision, including findings of fact and conclusions of law. The magistrate concluded that under the facts and circumstances of this case, the liquidated damages clause found in Article 28 of the Lease constituted a penalty that is unenforceable as a matter of law. The magistrate concluded that the amount of actual damages incurred by Harmon as a result of Haehn's breach was $25,166, and awarded judgment in that amount. On October 21, 2010, Harmon filed objections to the magistrate's decision. The trial court performed an independent review of the magistrate's decision and adopted it as its own on October 8, 2010.

### Liquidated Damages Clause versus Lease Buyout Provision

**{¶19}** In his sole assignment of error, Harmon asserts:

**{¶20}** "The Trial Court erred in failing to grant judgment in favor of Plaintiffs-Appellants for $250,000 as expressly and unambiguously required by Article 28 of the Lease between Defendant-Appellee (as Lessor) and Plaintiffs-Appellants (as Lessee) as the bargained for consideration to be paid to Plaintiffs-Appellants once Defendant-Appellee exercised his express right to sell the Demised Premises and cancel the Lease."

**{¶21}** Harmon raises two arguments challenging the trial court's decision to award actual damages rather than pursuant to damages provided for in the Lease. Harmon first, contends that Article 28 was an enforceable lease buyout provision, not a liquidated damages clause. Alternatively, Harmon argues that if the provision is, as a matter of law, a liquidated damages clause, it is enforceable. Each will be addressed in turn.

**{¶22}** First, Harmon contends that the provision at issue here is not truly a liquidated damages clause, but rather a negotiated "lease buyout provision" that the trial court should have enforced as a matter of law. Under Harmon's theory, the trial court was no more able to set aside Article 28 as unreasonable, than it was able to set aside the Lease's rent provision. Haehn does not respond directly to this argument.

**{¶23}** Regarding the standard of review, interpretation of an unambiguous contract provision, such as Article 28, presents a question of law that this court should review de novo. See *Kuptz v. Youngstown City School Dist. Bd. of Edn.*, 175 Ohio App.3d 738, 2008-Ohio-1676, 889 N.E.2d 166, at ¶23, citing *Latina v. Woodpath Development Co.* (1991), 57 Ohio St.3d 212, 214, 567 N.E.2d 262. Liquidated damages are defined as "an amount contractually stipulated as a reasonable estimation of actual damages to be recovered by one party if the other party breaches. If the parties to a contract have properly agreed on liquidated damages, the sum fixed is the measure of damages for a breach, whether it exceeds or falls short of the actual damages." Black's Law Dictionary (9th Ed. 2009). See, also, *Miller v. Blockberger* (1924), 111 Ohio St. 798, 146 N.E. 206, at syllabus.

**{¶24}** Harmon argues that Article 28 of the Lease is not a liquidated damages provision, but rather "a bargained-for provision giving Haehn the contractual right to sell the premises and cancel Appellant Harmon's lease, but only by paying Harmon a lease buyout price of $250,000." In support of his argument, Harmon cites several cases involving real estate purchase agreements with clauses providing for forfeiture of earnest money deposits. For example, in *Windsor v. Riback*, 11th Dist. Nos. 2007-G-2775, 2007-G-2781, 2008-Ohio-2005, the court concluded that such a clause was not a liquidated damages provision because "an earnest money provision in a real estate purchase agreement is commonly viewed in terms of an option contract, in which the 'fee is forfeited if the offeree does not exercise the option, as its very purpose is consideration for the privilege of keeping the offer open for stated period of time.'" Id. at ¶53 (citations omitted.) See, also, *Reitz v. Giltz & Assoc., Inc.,* 11th Dist. No. 2005-T-0126, 2006-Ohio-4175, at ¶26 (holding that provision concerning return of deposit on a real estate option

contract was not a liquidated damages provision because it did not apportion damages in the event of a breach); and *Gaskins v. Young*, 2nd Dist. No. 20148, 2004-Ohio-2731, at ¶30.

**{¶25}** This line of cases is factually distinguishable because the present case involves a right of first refusal, not an option. "A right of first refusal is a preemptive right requiring the owner to offer the property first to the holder of the right. It differs from an option because the grantee of a right of first refusal cannot compel the owner to sell the property as the grantee can with an option." *Beder v. Cleveland Browns, Inc.* (1998), 129 Ohio App.3d 188, 195, 717 N.E.2d 716, citing *Stratman v. Sheetz* (1989), 60 Ohio App.3d 71, 73, 573 N.E.2d 776. And although Harmon also relies on *Timmotors, Inc. v. Lima Ford, Inc.*, 3d Dist. No. 1-2000-11, 2001-Ohio-2138, it does not lend much support because the court there was not called upon to determine whether the lease provision was a liquidated damages clause. It was uncontested that the clause in *Timmotors* provided for an early lease termination fee.

**{¶26}** More relevant is *Midamco, L.P. v. Fashion Bug of Solon, Inc.* (1996)*,* 116 Ohio App.3d 854, 689 N.E.2d 605. In *Midamco,* a shopping center tenant's lease permitted the tenant to either terminate the lease or pay a drastically reduced rent (3% of gross sales), in the event that the lessor breached the lease's exclusivity provision by renting a space in the shopping center to another purveyor of plus-sized women's clothing. When the lessor ultimately breached this exclusivity provision, the tenant began to pay the reduced rent, which the lessor refused to accept, ultimately filing an eviction action. The trial court concluded that the rent reduction clause was not so great as to be a penalty and was therefore enforceable. On appeal, the Eighth District affirmed, but for different reasons, disagreeing with the characterization of the provision as a liquidated damages clause:

**{¶27}** "Appellant mischaracterizes Section 12.17 of the lease as a 'liquidated damages' or damages provision. * * * Section 12.17 represents an optional provision in the contract, implicated by a specific occurrence (in another store opening and selling like merchandise to defendant's), to provide relief (in the form of decreased rent or allowing

the tenant to terminate the lease) to an existing tenant of exclusive merchandise at the shopping center for the presumed decrease in profitability to the existing tenant's bottom line caused by the introduction of a direct competitor on the premises." Id. at 858.

{¶28} In reaching this conclusion, the Eighth District distinguished what it termed the "traditional liquidated damages clause cases," such as *Lake Ridge Academy v. Carney* (1993), 66 Ohio St.3d 376, 381, 613 N.E.2d 183:

{¶29} "The common thread in these cases cited by appellant is that the contracts at issue were prepared by the lessor, the employer, educational institution or equipment provider, and the respective liquidated damages provision inured to the economic benefit of those entities upon a default or breach of the contract by the other contracting party. In the case sub judice, the contract was prepared by the lessor, but the economic benefit in the application of Section 12.17 inures to the benefit of the lessee, not the lessor. Additionally, the traditional stipulated damage cases require the default to be occasioned by the actions of, for our purposes, the lessee. * * *

{¶30} "Our determination that this provision, Section 12.17, does not involve a damages issue is also supported by the lack of any mention of 'damages' in the title or language of Section 12.17. Furthermore, to interpret Section 12.17 as a damages provision is preposterous. The lease at issue was prepared by Midamco, a presumably savvy and experienced commercial operation. It is inconceivable that such a business entity would specifically provide in its lease a provision which, if implicated, would cause a penalty to itself and for which relief would be anticipated." *Midamco* at 858.

{¶31} Harmon correctly points out that the facts of this case parallel *Midamco* in several respects. Article 28, like the provision in *Midamco*, fails to mention the word "damages." Further, Article 28 was prepared by Haehn, the lessor and an experienced businessman, and in fact was added to the contract specifically as the result of the parties' negotiations. And like in *Midamco*, the economic benefit flowing from the application of Article 28 inured to the benefit of the lessee.

{¶32} However, the precedential value of *Midamco* is questionable. Despite being a published opinion in 1996, it has only been cited one time, see *Safdi v. Gallegos* (July

16, 1999), 1st Dist. Nos. C-980814, C-980857, and in that case the court upheld the trial court's decision that a liquidated damages clause was an unenforceable penalty. Id. at *6. In addition, the analysis set forth in *Midamco* did not enjoy a clear majority; one of the judges on the panel concurred in judgment only. Accordingly, we decline to embrace *Midamco* as persuasive authority.

{¶33} Further undermining Harmon's argument is that from the inception of the lawsuit, he appears to consider Article 28 as a liquidated damages clause. Count One of Harmon's complaint, alleging breach of contract, states:

{¶34} "14. Defendant Russell A. Haehn breached his obligations under the Lease, as he sold the Premises in violation of the right of first refusal provided in Article 28 of the Lease.

{¶35} "15. Prior to selling the premises, Defendant Russell A. Haehn did not terminate the lease or exercise any rights against Plaintiff because of any alleged breach of the lease.

{¶36} "16. As a result of Defendants [sic] actions, Plaintiffs have been damaged in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00), or such greater amount as may be shown at trial, plus pre- and post- judgment interest and costs."

{¶37} Further, Harmon's reply brief in support of summary judgment countered Haehn's argument that Article 28 is a penalty provision by arguing that Article 28 is an "*enforceable liquidated damages clause.*"

{¶38} It was not until Harmon filed objections to the magistrate's decision granting summary judgment but refusing to award the stipulated damages, that Harmon abruptly changed tack and advanced the lease-buyout provision theory, specifically arguing: "The payment at issue in this case is not a liquidated damages payment to be made for a breach of contract, but is an amount negotiated and agreed on by both parties that the Defendant was required to make if he chose to end the Lease before the end of the Lease term and sell the property. The Defendant's choice to terminate the Lease and sell the property was not a breach of the Lease, but when he chose to do so, he became obligated to pay the negotiated sum." This argument contrasts sharply with the

allegations Harmon made in his Complaint, quoted above.

{¶39} And although Harmon claims in his appellate brief that "[n]either the language of Article 28 nor any reasonable interpretation thereof reveals the Lease Buyout Price to be an agreed upon amount of money to be paid in lieu of damages for breach of contract," Harmon testified to exactly that at the damages hearing:

{¶40} "Q. And at the time you signed the lease, did you believe that this [the $250,000] was a fair estimation of the damages you would suffer if the lease was terminated early?

{¶41} "A. [Harmon]: Well, yeah. Yeah."

{¶42} This is precisely the definition of liquidated damages, i.e., an amount contractually stipulated as a reasonable estimation of actual damages to be recovered by one party if the other party breaches. *Miller*, at syllabus, supra. Thus, based upon all of the above, Article 28 is a liquidated damages provision.

### Enforceability of the Clause

{¶43} Second, Harmon contends that if this court concludes Article 28 contains a liquidated damages clause, it is valid and the trial court erred in deeming it an unenforceable penalty. Harmon first raises a procedural issue, contending that by failing to raise the unenforceability of the liquidated damages clause as an affirmative defense in his Answer, Haehn has waived the argument on appeal. This argument is meritless.

{¶44} Although it is true that Haehn failed to raise this defense in his Answer, Civ.R. 15(B) provides in relevant part that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Civ.R. 15(B). "[I]mplied consent is not established merely because evidence bearing directly on an unpleaded issue is introduced without objection. Rather, it must appear that the parties understood the evidence was aimed at the unpleaded issue." *State ex rel. Evans v. Bainbridge Twp. Trustees* (1983), 5 Ohio St.3d 41, 46, 5 OBR 99, 448 N.E.2d 1159.

{¶45} Haehn's brief in opposition to Harmon's motion for summary judgment first raised the issue of Article 28's validity. In reply, Harmon did not object to that argument

based on waiver, but rather argued the merits, contending that Article 28 was a valid and enforceable liquidated damages clause. Subsequently, a hearing was held to determine whether the liquidated damages provision was enforceable and Harmon again argued the merits of his position. The record demonstrates Harmon fully understood the liquidated damages provision was an issue, and consented to litigate it. Pursuant to Civ.R. 15(B), the defense was not waived.

{¶46} Turning to the merits of the enforceability issue, as a general premise, Ohio law considers the freedom to contract as fundamental to our society as the right to speak without restraint. *Nottingdale Homeowners' Assn., Inc. v. Darby* (1987), 33 Ohio St.3d 32, 36, 514 N.E.2d 702, citing *Blount v. Smith* (1967), 12 Ohio St.2d 41, 47, 41 O.O.2d 250, 231 N.E.2d 301. In some circumstances, however, complete freedom of contract is not permitted for public-policy reasons. See, e.g., *Conny Farms v. Ball Resources*, 7th Dist. No. 09CO36, 2011-Ohio-5472.

{¶47} For example, the law generally disfavors penalty provisions for contract breaches. While parties may insert into their contract a clause that apportions damages in the event of a default, i.e., a liquidated-damages clause, they may not agree to a provision that operates as a penalty and punishes a party for breach. See *DeCastro v. Wellston City School Dist. Bd. of Edn.* (2002), 94 Ohio St.3d 197, 201, 761 N.E.2d 612; *Lake Ridge,* supra, at 381.

{¶48} Deciding whether a contract provision is a valid liquidated damages clause or an unenforceable penalty can entail a complex analysis, and is a question of law to be reviewed de novo. Id. at 380. The Ohio Supreme Court has instructed that the following test should be applied in making that determination:

{¶49} "Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not

express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof." *Lake Ridge* at 382; see, also, *Samson Sales, Inc. v. Honeywell, Inc.* (1984), 12 Ohio St.3d 27, 12 OBR 23, 465 N.E.2d 392, at syllabus.

{¶50} Whether a particular sum specified in a contract is intended as a penalty or as liquidated damages depends upon the operative facts and circumstances of a particular case. Id. at 28-29. Furthermore, if a stipulated damages provision is challenged, a court must view the provision "in light of what the parties knew at the time the contract was formed and in light of an estimate of the actual damages caused by the breach." *Kindle Road Co., L.L.C. v. Trickle*, 5th Dist. No. 03CA99, 2004-Ohio-4668, at ¶21. When a provision was reasonable at the time that it was formulated and bears a reasonable, but not necessarily exact, relationship to the actual damages, the provision is enforceable. Id. (internal citation omitted.)

{¶51} Under the facts and circumstances of this case, the trial court correctly concluded that the stipulated damages provision constitutes an unenforceable penalty. As to the first prong of the test, damages at the time the contract was formed were relatively certain. Although Harmon testified that if he were to make extensive renovations to the property only to have Haehn sell it to someone else and terminate the lease he would suffer some intangible damages, such as loss of goodwill. However, the bulk of Harmon's potential damages could be easily calculated in the event of a breach, for example, moving, advertising and build-out costs. Skipping ahead to the third prong, i.e., whether the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount of $250,000 should follow the breach thereof, the language of Article 28 adequately evinces the parties' intent, which would cut in favor of enforceability.

{¶52} However, even assuming that the damages at the time of the contract's formation were uncertain, and the contract is consistent with the parties' intention that damages in the amount of $250,000 should follow a breach, the amount of damages specified is manifestly unreasonable and thus the clause is a penalty pursuant to the

second prong of the *Lake Ridge* test. "Reasonable compensation for actual damages is the legitimate objective of the liquidated damages provisions and, where the amount specified is plainly unrealistic and inequitable, courts will ordinarily regard the amount as a penalty." *Hunter v. BPS Guard Servs., Inc.* (1995), 100 Ohio App.3d 532, 551, 654 N.E.2d 405. A damages provision is likewise unenforceable where the amount specified is manifestly disproportionate to the consideration paid or the damages that could foreseeably result from a breach. *Samson Sales* at 29.

{¶53} Although Harmon testified that $250,000 was an approximation of damages should Haehn breach Article 28, we conclude that this amount is so unreasonably high as to constitute a penalty, given the circumstances of this case. The monthly rent paid by Harmon during the course of the lease agreement never exceeded the base amount of $3,000 per month, as Harmon never sold a single car. In fact, the dealership never opened, and Harmon's renovations to the property were minimal.

{¶54} In addition, the $250,000 stipulated damages amount is equal to nearly one-third of the ultimate selling price of the property. Moreover, Harmon did not testify as to how the $250,000 bore a reasonable relationship to the amount of damages in the event of a breach. This court has previously held where the appellants never testified to or presented any evidence of a method of calculation used to arrive at the stipulated damages amount, nor could their attorney recall any attempts at calculating the damages to arrive at the figure, there was no basis for concluding that the amount constituted anything more than a penalty, and that it was therefore unenforceable. *Wright v. Basinger*, 7th Dist. No. 01CA81, 2003-Ohio-2377, at ¶20.

{¶55} Further, although the focus of the analysis is mainly on the particular facts and circumstances at the time of the contract's formation, see, *Kindle Road*, supra; and a party is *not required* to prove actual damages, see *USS Great Lakes Fleet, Inc. v. Spitzer Great Lakes Ltd.* (1993), 85 Ohio App.3d 737, 741, 621 N.E.2d 461; some courts have nonetheless analyzed whether there is a large disparity between actual and stipulated damages in deciding whether to enforce a liquidated damages clause. For example, in *Domestic Linen Supply & Laundry Co. v. Kenwood Dealer Group, Inc.*, 109 Ohio App.3d

312, 672 N.E.2d 184, the court compared the difference between actual and stipulated damages and decided to uphold the liquidated damages clause:

**{¶56}** "In the case at bar, the trial court found that appellant had proven actual damages of $152,000 but held that appellant was entitled to recover only $91,354.60 in liquidated damages. We find that in light of the actual damages of $152,000, $91,354.60 in liquidated damages was not so 'manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it [did] not express the true intention of the parties * * *.'" Id. at 322, quoting *Samson Sales*, 12 Ohio St.3d 27, at syllabus.

**{¶57}** Similarly, the court in *Courtad v. Winner*, 9th Dist. No. 20630, 2002-Ohio-2094, concluded that "[s]tipulated damages in the amount of $40,000 on a $45,000 note is an amount disproportionate to the actual damages that resulted from failing to make an installment payment of $11,250." Id. at ¶25. See, also, *Lakewood Creative Costumers v. Sharp* (1986), 31 Ohio App.3d 116, 509 N.E.2d 77, at paragraph two of the syllabus ("A liquidated damages clause which provides for an amount nearly forty times the actual damages is not reasonably proportionate to the loss sustained, and thus is invalid.")

**{¶58}** In the present case, it goes without saying that there is a substantial disparity between actual damages ($25,166) and stipulated damages ($250,000). Based on the foregoing the trial court correctly concluded that the liquidated damages provision in Article 28 is an unenforceable penalty.

### Anticipatory Repudiation

**{¶59}** Finally, Haehn asserts in his Appellee's brief that Harmon's actions, including late payment of rent, failure to renovate, failure to pay real estate taxes and utilities and failure to provide adequate assurances, constitute an anticipatory repudiation of the Lease. Haehn raised this argument in summary judgment proceedings below. However, to properly raise this argument on appeal, Haehn should have filed a cross-appeal, because he seeks to change the trial court's judgment, not merely to defend it. See *Harper v. Dog Town, Inc.*, 7th Dist. No. 08 NO 348, 2008-Ohio-6921:

**{¶60}** "App.R. 3(C) contemplates two situations where an appellee may seek to

raise assignments of error: 1) when the appellee seeks to both defend the judgment and change the judgment; and 2) when the appellee only seeks to defend the judgment. If the appellee seeks to change the judgment in addition to defending that judgment, then the appellee 'shall file a notice of cross appeal within the time allowed by App.R. 4.' App.R. 3(C)(1)." *Harper* at ¶26.

**{¶61}** By arguing that Harmon repudiated the agreement, Haehn is challenging the trial court's underlying determination that he was in breach of the Lease, meaning he contests the trial court's decision to award *any* amount of damages to Harmon. Therefore, with this argument he seeks not only to defend the judgment of the trial court, but also to change it. This requires a notice of cross-appeal, which Haehn did not file. Accordingly, we will not address the merits of his anticipatory repudiation argument.

**{¶62}** In conclusion, the trial court correctly categorized Article 28 as a liquidated damages clause, and correctly decided that the provision is an unenforceable penalty. Accordingly, Harmon's sole assignment of error is meritless, and the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Vukovich, J., concurs.