OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Appellants, Dog Town, Inc., and Lee Crock, appeal the decision of the Noble County Court of Common Pleas that found Appellees, J.D. and Michelle Harper, owned rail-related material in a railbed running along property which adjoined the property of the parties; awarded damages to Appellees for the railbed material removed by Appellants; and made an award of attorney fees to Appellees. On appeal, Appellants argue that the trial court erred when making the attorney fees award and calculating damages. Appellees then raise two conditional assignments of error in which they argue that the trial court erred by not finding that they did not own the property underlying the entire railbed.
 {¶ 2} Appellants' argument that the trial court should not have awarded any attorney fees is meritless. It was well within the discretion of the trial court to award attorney fees based on Appellants' wanton conduct. However, Appellants are correct that the trial court erred when calculating the amount of attorney fees to be awarded since the trial court did not sufficiently state the reasoning behind its calculation. In addition, we find that the damages award was plain error and against the manifest weight of the evidence because the trial court judge conducted his own experiments on the evidence. Finally, Appellees' conditional assignments of error are meritless, because they argue that the trial court's decision should be changed, rather than merely trying to defend that judgment. Such a request is not proper in the absence of a cross-appeal, and Appellees failed to file a notice of cross-appeal. Accordingly, the trial court's judgment is affirmed in part, reversed in part, and remanded for a determination of reasonable and appropriate attorney fees award, and a rehearing on damages.
 Facts {¶ 3} In May 1869, Fulton Caldwell conveyed an instrument to the Marietta Pittsburgh Railroad Company which allowed the company to build a railroad across his land. Eventually, the property on each side of the railway was split into different parcels. Appellees came to own the land on the west side of the railway. Appellants came to own the property on the east side of the railway. *Page 3 
 {¶ 4} Eventually, the railroad company abandoned the railway which they had been conveyed and their interest was conveyed back to Appellees' predecessor in interest. Appellees thought this meant that they owned in fee simple the entire property that the railway traversed. Appellants, in contrast, believed that they and Appellees each owned their half of the railway up to the center of the former location of the railroad tracks.
 {¶ 5} Appellees observed Appellants operating on the east side of the railway and informed Appellants of Appellees' belief that they owned the entire railway. During Appellants' subsequent operations, they removed the material which had supported the railroad tracks and stored this material in a pile on their land.
 {¶ 6} Eventually, Appellees brought suit against Appellants to establish ownership of the land. Appellees also sought damages for the material removed from the land. After a bench trial, the trial court concluded that Appellees did not own the entire railway in fee simple and agreed with Appellants that the two landowners owned their half of the railway. However, the trial court found that Appellees owned all the railroad materials, regardless of whose land they were on, and awarded Appellees damages for the material removed from the railbed. The trial court also awarded attorney fees to Appellees for Appellants' "wanton" and "unilateral" action.
 Attorney Fees {¶ 7} Appellants' first two assignments of error both relate to the trial court's award of attorney fees. In their first assignment of error Appellants argue:
 {¶ 8} "The trial court erred and abused its discretion in assigning Appellee [sic] two-third's of Appellees' attorney fees."
 {¶ 9} In their second assignment of error Appellants argue:
 {¶ 10} "The trial court erred in the court's finding that Appellants should pay attorney fees of Appellees due to willful and wanton unilateral action of Appellants is against the manifest weight of the evidence."
 {¶ 11} For ease of analysis, we will first discuss Appellants' second assignment of error. We review an award of attorney fees under an abuse of discretion standard. *Page 4 
 Motorists Mut. Ins. Co. v. Brandenburg, 72 Ohio St.3d 157, 160, 1995-Ohio-0281, 648 N.E.2d 488. The phrase "abuse of discretion" connotes more than an error of law; it implies that the trial court's judgment was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 12} The Ohio Supreme Court has held that a trial court may not award attorney fees to the prevailing party in a lawsuit, if no statute authorizes the payment of such fees, unless the party against whom the fees are taxed was found to have acted in bad faith, vexatiously, wantonly, obdurately, or for oppressive reasons. Sharp v. Norfolk W.Ry. Co., 72 Ohio St.3d 307, 314, 1995-Ohio-0224, 649 N.E.2d 1219. There is no statute authorizing the payment of attorney fees in this case. Thus, the trial court could only order the payment of those fees pursuant to Sharp.
 {¶ 13} Initially, Appellees argue that Appellants have waived this issue by agreeing to allow the issue to be submitted to the trial court. At trial, Appellants' counsel stated as follows:
 {¶ 14} "I would agree in the event the court decides to award attorney fees to either party in this case that I believe there would have to be additional testimony or at least evidence regarding the necessity and appropriateness of the fees. I would agree on that issue to allow that to be submitted by either party at a later time if the court awards the fees."
 {¶ 15} This statement is not a stipulation that the trial court should award attorney fees to Appellees if they prevailed. Instead, it is merely a statement of what Appellants believed the correct procedure the trial court should follow should it choose to award those fees. Thus, Appellees' argument that Appellants have waived any issue regarding the award of attorney fees is meritless.
 {¶ 16} In its judgment entry, the trial court explained its rationale behind awarding attorney fees as follows:
 {¶ 17} "Unquestionably there was a controversy between the parties, but the matter was unnecessarily complicated by the unilateral action of Defendants. The expenses would probably have been the same even without said unilateral action. But *Page 5 
given the nature of the testimony at trial, the lion's share of Plaintiff's legal expenses are directly related to that unilateral action. Assigning two-thirds ($7445.00) of the Plaintiff's counsel fees to the wanton and willful unilateral action of defendant's [sic] would be appropriate."
 {¶ 18} The trial court further explained its reasoning at the time it announced its decision as follows:
 {¶ 19} "Now, the Court's going to find that the conduct of the Defendants in this matter is sufficient to warrant the payment of attorney fees. It's only after Mr. Crock had attempted to buy the property from the Plaintiffs and was rejected that he went out on this what, well let' say this, unilaterally took it upon his part to go in there and to remove property from the right-of-way. I'm not persuaded that the flood did this; I think Mr. Crock did."
 {¶ 20} Appellants argue that the trial court's characterization of their actions as "wanton" was improper, and that therefore the award of attorney fees was an abuse of discretion. In order to prove that someone has acted wantonly, a plaintiff does not need to prove "`that an injury be intended or that there be any ill will on the part of the actor toward the person injured as a result of such conduct.'" Buckeye UnionIns. Co. v. New England Ins. Co., 87 Ohio St.3d 280, 286, 1999-Ohio-0067, 720 N.E.2d 495, quoting Tighe v. Diamond (1948),149 Ohio St. 520, 526, 37 O.O. 243, 80 N.E.2d 122. Instead, a person acts wantonly when he acts despite the fact that he is "conscious that his conduct will in all probability result in injury." Fabrey v. McDonaldVillage Police Dept., 70 Ohio St.3d 351, 356, 1994-Ohio-0368,639 N.E.2d 31.
 {¶ 21} Appellants contend that their actions could not be described as wanton since they were merely removing material from the railbed on their own land. However, this argument disregards the circumstances surrounding that removal. Appellees believed the whole railbed belonged to them; Appellants thought they owned half that area.
 {¶ 22} Appellee Harper testified that he expressed his disagreement to Appellant Crock about the parties' rights to the land, however Crock told Harper that Harper would *Page 6 
have to take him to court to resolve anything. Specifically, Harper testified:
 {¶ 23} "I said Lee [Crock] I said I own this. He says no you don't. I said, yes I do. I said you know it says there in the deed. He says, no I own half of this railroad track, he said if you don't like it take me to court. I said, well if that's the way it's got to be I'll take you to court. He said, well it will cost you a lot of money, and I said I don't care. So, here we are."
 {¶ 24} After this exchange, Appellants began removing the material from the railbed. Appellant Crock admitted that he never had a lawyer look at the records to establish the status of his rights in the property, relying on his own investigations instead.
 {¶ 25} These facts, which the trial court appears to have accepted, demonstrate that Appellant Crock disregarded a known risk that he may not have had the property rights that he originally assumed. Rather than waiting to find out whether he was correct, Crock proceeded to unilaterally remove materials from the railbed.
 {¶ 26} It was not unreasonable for the trial court to conclude that Appellants' actions were wanton in nature. Appellants clearly knew that an injury would result to Appellees if they were wrong about their belief in their ownership of the property and rights to the material in the railbed. They admitted that they had never asked any attorney for an opinion as to those rights. Yet they acted by collecting those materials anyway, despite actual knowledge of a claim to the contrary. It was reasonable for the trial court to conclude that Appellants acted wantonly; Appellants would have known that injury was probable had they consulted an attorney prior to removing the material. Further, there was evidence at trial that Appellants only began to remove the material after Appellees rejected their offer to purchase half of the railbed.
 {¶ 27} Although we might not have reached the same conclusion as the trial court, here our standard of review is for an abuse of discretion. The trial court in this case gave sufficient reasoning as to why it chose to award attorney fees. Thus, the award was proper underSharp, supra. Accordingly the trial court's decision was not an abuse of discretion. Appellants' second assignment of error is meritless.
 {¶ 28} However, we do agree with Appellants' contention that the trial court erred in *Page 7 
its calculation of the amount of attorney's fees to award. In their first assignment of error, Appellants argue that the amount of attorney's fees awarded by the trial court was excessive since the conduct which resulted in paying those fees was only related to the damages issues and that Appellees' attorney spent little time preparing those issues for trial.
 {¶ 29} We recently held that a trial court must "explain how it reached" the amount of an attorney fee it awards. Braglin v. Crock, 7th Dist. No. 04-NO-318, 2005-Ohio-6935, at ¶ 17, citing Bittner v.Tri-County Toyota, Inc. (1991), 58 Ohio St.3d 143, 145-146,569 N.E.2d 464. Bittner stated that the factors a trial court should consider when making this determination were in former DR 2-106(B), which has been superseded by Rule 1.5 of the Rules of Professional Conduct. Subpart (a) of that Rule gives the following factors: the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; the fee customarily charged in the locality for similar legal services; the amount involved and the results obtained; the time limitations imposed by the client or by the circumstances; the nature and length of the professional relationship with the client; the experience, reputation, and ability of the lawyer or lawyers performing the services; whether the fee is fixed or contingent. Id.
 {¶ 30} In Braglin we concluded that the trial court did not adequately explain its reasons for awarding the amount of attorney fees it chose. The trial court in that case stated that it was awarding attorney fees because "Plaintiff's position [is] well taken and orders modification of the prior decision that the finding of attorney fees awarded to Plaintiff shall be in the amount of $45,000." Id. at ¶ 18. We found that the trial court failed to "set forth its methodology in determining the amount of attorney fees with sufficient specificity so as to satisfy the criteria contemplated by Bittner" Id. at ¶ 19.
 {¶ 31} In this case, the trial court appears to have made the same type of error described in Braglin. The trial court did not explain how the amount of attorney fees it awarded satisfied the factors to be used when determining an appropriate amount of *Page 8 
attorney fees. Indeed, its decision that two-thirds of the fees generated was an appropriate amount of fees to award appears to have been an arbitrary gut feeling as to what the trial court thought was fair. This is clearly contrary to our holding in Braglin.
 {¶ 32} Appellees argue that Braglin is distinguishable because the trial court in this case stated its findings on the record. However, this is clearly not the case. The findings Appellees refer to are those relating to liability and damages, as well as attorney fees. The trial court's discussion of the attorney fees amounts to only the small quotes provided above.
 {¶ 33} For these reasons, Appellants' first assignment of error is meritorious. This case is reversed and remanded to the trial court for a determination of reasonable attorney fees.
 Damages {¶ 34} In their third and final assignment of error, Appellants argue:
 {¶ 35} "The court's award of damages is against the manifest weight of the evidence."
 {¶ 36} Appellants take issue with the fact that Appellees failed to produce any evidence regarding the composition of the materials actually removed by Appellants in order to obtain damages. Civil judgments supported by some competent, credible evidence going to the material elements of the case will not be disturbed as being against the manifest weight of the evidence. Shemo v. Mayfield Hts. (2000), 88 Ohio St.3d 7,10, 2000-Ohio-258, 722 N.E.2d 1018, citing C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. In reviewing the trial court's judgment, every reasonable presumption is made in favor of that judgment and the court's findings of fact. Id., citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,10 OBR 408, 461 N.E.2d 1273. The trial court is in the best position to judge the credibility of the witnesses by viewing voice inflection, demeanor, and gestures. Seasons Coal at 80. A fact-finder is allowed to make reasonable inferences when reaching his conclusions. State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-0052, 678 N.E.2d 541. As the Ohio Supreme Court more recently explained, civil judgments reviewed under a manifest *Page 9 
weight of the evidence standard are afforded even more deference than criminal cases reviewed under manifest weight. State v. Wilson,113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, at ¶ 26.
 {¶ 37} In this case, the damages awarded to Appellees were for the railbed material that Appellants removed from the railbed. Those materials were allegedly placed into a pile on Appellants' land. Appellants argue that Appellees should have introduced some evidence of the composition of the materials in that pile in order to obtain an accurate calculation of damages. Instead, Appellees removed some of the material in the railbed from their own half of the property and allowed the trial court to inspect those materials.
 {¶ 38} We disagree with Appellants' contention that a measurement of the materials found in the pile was the only accurate measure of Appellees' damages. The trial court found that the material in the railbed belonged to Appellees and the most accurate way to determine what those materials were composed of before they were removed was to inspect the composition of the material still in the ground. Moreover, Appellants' argument ignores the fact that the trial court was allowed to make reasonable inferences when calculating the amount of damages. It is reasonable to infer that the materials removed by Appellants were similar to the materials in the railbed.
 {¶ 39} However, we nonetheless must reverse the damages award because the trial court conducted its own experiment on the sample railbed materials in order to arrive at its damage award. Although this error was not specifically raised by the Appellants on appeal nor raised as an objection at the trial court level, we conclude that the conduct of the trial court here constituted plain error.
 {¶ 40} Admittedly, "[i]n appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Goldfuss v. Davidson, 79 Ohio St.3d 116, 1997-Ohio-401,679 N.E.2d 1099, at paragraph one of the syllabus. However. we *Page 10 
find the actions by the trial court here constitute such an exceptional circumstance and we therefore exercise our discretion to notice the plain error.
 {¶ 41} In this case, Appellees' expert witness, Paul Sherry, the City Engineer for Cambridge, Ohio testified at trial that approximately 1400 cubic yards of material was removed from the railbed, and that this material weighed approximately one ton per cubic yard. He further testified that some of the material in the railbed was slag stone, which has a market value of $23.75 per ton. Sherry then produced a random sample of material from the railbed. Although he provided this sample to the court, Sherry did not perform any tests on the sample to determine what percentage constituted valuable slag.
 {¶ 42} Instead, during a recess, the trial court judge conducted his own experiment to determine the slag composition of the random sample:
 {¶ 43} "COURT: * * * "[T]here was presented to the court as one of the exhibits a random sample of this fill which the court had to review. This random sample, here's what the court did. I simply took that random sample and put it in a gallon paint can, empty paint can and then measured the depth and then I dumped out that random sample and picked from it the, the materials basically slag, stone and more compacted heavy substance, the bulk of it appears to be more ash, a lighter material. The court removed from that stuff then the stone portion and then measured what was left and came up with an amount which converted to a percentage convinced this court that about 21 percent of that was of the stone or slag variety."
 {¶ 44} The court then used the percentage it obtained from its experiment to calculate the damage award. Appellants never presented any evidence of their own about the composition of the random sample.
 {¶ 45} Although the trial court is permitted to make reasonable inferences when calculating damages, the court is not permitted to conduct its own experiments on the evidence in order to arrive at a damages award. Pursuant to Evid. R. 703(C), an expert witness may testify about the results of tests or experiments so long as "(1) [t]he theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles; (2) [t]he design of the *Page 11 
procedure, test, or experiment reliably implements the theory; and (3) [t]he particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 46} And although "[t]he admission or rejection of evidence concerning out-of-court experiments is a matter peculiarly within the discretion of the trial court," Metro. Life Ins. Co. v. Tomchik (1999),134 Ohio App.3d 765, 779, 732 N.E.2d 430, certainly the trial court itself does not have the discretion to perform such experiments on its own.
 {¶ 47} Thus, we are exercising our discretion to reverse the damages award on the basis of the plain error committed by the trial court. Accordingly, we find that the trial court's award of damages was contrary to the manifest weight of the evidence and remand this case for a rehearing on the issue of damages. See, e.g., Mt. Pleasant VolunteerFire Dept. v. Stuart, 7th Dist. No. 01JE11, 2002-Ohio-5227. Appellants' third assignment of error is meritorious.
 Conditional Assignments of Error {¶ 48} Appellees attempt to argue two assignments of error of their own. Specifically, they argue:
 {¶ 49} ""The trial court erred in finding that the interst [sic] held by Appelees [sic] in the east portion of the former railbed is not the fee."
 {¶ 50} "The trial court erred in failing to hold that the instrument of record in Noble County Deed Vlume [sic] 28 Page 148 is a grant not an easement."
 {¶ 51} App. R. 3(C) contemplates two situations where an appellee may seek to raise assignments of error: 1) when the appellee seeks to both defend the judgment and change the judgment and 2) when the appellee only seeks to defend the judgment. If the appellee seeks to change the judgment in addition to defending that judgment, then the appellee "shall file a notice of cross appeal within the time allowed by App. R. 4." App. R. 3(C)(1). Appellees did not file a notice of cross appeal in this case, so they may not make any arguments which would change the trial court's judgment. Allied Erecting Dismantling Co., Inc. v.Youngstown, 151 Ohio App.3d 16, 2002-Ohio-5179, 783 N.E.2d 523, at ¶ 68, 80-81. Thus, Appellees' assignments of error may only be used as a shield to protect the judgment of the trial court against reversal, not as a sword to destroy or *Page 12 
modify that judgment. Duracote Corp. v. Goodyear Tire Rubber Co.
(1983), 2 Ohio St.3d 160, 2 OBR 704, 443 N.E.2d 184; Parton v.Weilnau (1959), 169 Ohio St. 145, 8 O.O.2d 134, 158 N.E.2d 719.
 {¶ 52} In their assignments of error, Appellees argue the trial court erred by concluding that they owned only half of the property at issue in this suit. They instead contend the evidence shows they owned all of that property. These arguments are clearly designed to change the trial court's judgment, not merely defend that judgment. Moreover, these arguments could not protect the trial court's judgment on the issues raised by Appellants. Accordingly, Appellees' conditional assignments of error are dismissed due to Appellees' failure to file a cross-appeal.
 Conclusion {¶ 53} Appellants' challenge to the trial court's decision to award some amount of attorney fees is meritless. There was some evidence that Appellants acted wantonly and therefore the trial court's decision to award some attorney fees was not unreasonable. However, the trial court did err by failing to explain how it calculated the fee award. In addition, we conclude that the trial court's damages award was plain error and against the manifest weight of the evidence because the trial court judge conducted experiments on the evidence. Finally, we dismiss Appellees' conditional assignments of error, because they challenge the trial court's ruling, rather than merely defending that ruling, and therefore they are not proper arguments for conditional assignments of error.
 {¶ 54} Accordingly, the judgment of the trial court is hereby affirmed in part, reversed in part, and the case is remanded to the trial court for a proper determination of reasonable and appropriate attorney fees, and a rehearing on damages.
Donofrio, J., concurs.
 Vukovich, J., concurs. *Page 1